Peggy A. King v. Commissioner.
King v. Commissioner
Docket No. 90695.
United States Tax Court
T.C. Memo 1962-93; 1962 Tax Ct. Memo LEXIS 219; 21 T.C.M. (CCH) 495; T.C.M. (RIA) 62093; April 23, 1962
Peggy A. King, pro se., 1325 Albina, Berkeley, Calif. James Booher, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined a deficiency in income tax in the amount of $400 for the calendar year 1958. The sole issue is whether petitioner is entitled to deduct certain expenses as educational expenses. Findings of Fact For the taxable year 1958, the petitioner, Peggy Andrews King, filed her Federal income tax return with the district director of internal revenue, Dallas, Texas. Petitioner graduated from Polytechnic High School, Fort Worth, Texas, in 1938. She then entered *220 and attended North Texas Agricultural College (now Arlington State College), Arlington, Texas, for one semester. In 1940, petitioner transferred to Texas Christian University (hereinafter referred to as U.C.U.), Fort Worth, Texas, where she received her Bachelor of Arts degree in 1947. As a part-time student, she majored in psychology and sociology. In 1947, petitioner began working on her Master of Arts degree at T.C.U. In 1951, she attended the School of Social Work at the University of Texas, Austin, Texas, for one semester in order to improve the skills of her work. On May 31, 1953, petitioner received her Master of Arts degree in psychology and sociology from T.C.U. During the fall of 1953, [1] 1954, [2] 1956 [3] and spring of 1958 [4] petitioner attended T.C.U. where she took one course each semester. In the summer of 1955, petitioner attended Claremont College in Claremont, California. [5] In 1954, [6] 1955 [7] and 1956, [8] petitioner attended North Texas State College (hereinafter referred to as North Texas), Denton, Texas. Petitioner's later work at T.C.U. and North Texas was accomplished by evening courses and on Saturdays. During the summer of 1956, petitioner attended Stanford *221 University (hereinafter referred to as Stanford), Stanford, California. [9]
Starting in 1949, petitioner worked as an assistant juvenile probation officer in Fort Worth. In December 1954 she changed jobs, becoming a visiting teacher in the Fort Worth public schools. Visiting teachers are trained social workers who work in a liaison position between the pupil, the home, and the school. They evaluate and counsel with individual pupils and their parents. The principal function of the visiting teacher is to facilitate the progress and development of individual pupils who have greater than average school problems. The visiting teacher service is based on the behavioral sciences and is a field that is subject to growth and change. Petitioner believed that if she were *222 going to be in this field, it was necessary to keep pace with its development. It is common and usual for people in the field of special services to continue their education either through school districts providing for it or through the individual's own efforts. The Fort Worth school system set aside $12,000 per year for in-service education of visiting teachers. Of the ten visiting teachers employed by the Fort Worth school system, six were pursuing further education on their own. In 1959, the Palo Alto (California) school system where petitioner did some teaching, had four psychologists or visiting teachers. All four of these teachers were attending school in order to keep up with the new techniques in the field of behavioral science. As of 1958, petitioner had received most of her education in Texas. Petitioner believed that this fact might have a limiting effect on the approach she took to certain problems and that she might achieve a fresh approach by attending a school in another state. Early in 1958, petitioner applied for admission to Stanford as a full-time student. Subsequently, petitioner was accepted for entrance to the Stanford graduate school. Petitioner intended *223 to work at Stanford on her Ph. D. in Education. Although the degree had the title of "Education" rather than "Psychology" or "Sociology," she was still working in the same field. For the 1957-1958 school year, petitioner's contract with the Fort Worth school system did not expire until August 31, 1958. Before leaving for Stanford, petitioner obtained a one-year leave of absence, for the 1958-1959 school year, from the Fort Worth school system. Petitioner gave up her rented home and stored her furnishings with friends and relatives in Fort Worth. In order to obtain her Ph. D. in Education, petitioner was required to complete certain courses, write a dissertation on a school-approved subject, and then pass a written examination. In addition, before she could be formally accepted as a doctorate candidate, petitioner had to complete certain units of course work and pass an interview. At the time she went to Stanford, petitioner intended to complete the necessary course work in one year and then return to Texas to write her dissertation. Several subsequent events affected the carrying out of this intention. First, petitioner changed her degree program slightly and this change made *224 it difficult to complete the necessary course work in one year, although her original plan could have been completed within that period. Secondly, in March of 1959, petitioner returned to Texas, where she discussed her situation with the assistant superintendent and the superintendent of the Fort Worth school system. They advised her to stay in California until she had finished her dissertation. Petitioner thereupon decided to remain in California until she completed her dissertation. Petitioner began her course work at Stanford on June 22, 1958. During the summer and autumn quarters of 1958, she completed various courses. [10] The following January or February, petitioner was formally accepted as a candidate for the degree of Doctor of Education in guidance work. The first summer (1958) at Stanford, petitioner lived in an undergraduate dormitory. For the fall quarter of 1958, petitioner moved to a graduate dormitory. *225 During the first quarter of 1959, petitioner moved to an undergraduate dormitory where she was resident assistant. She received her room and board for being resident assistant. In the summer of 1959, petitioner moved to the servants' quarters on an estate in Palo Alto. Petitioner completed her course work in the summer of 1959. Since petitioner had arranged to stay at Stanford for only one year, she had to make new financial arrangements when she decided to remain in California to work on her dissertation, and, in September 1959, petitioner began teaching, part time, in the Palo Alto school system. This part-time job also enabled petitioner to do research for her dissertation. Petitioner worked on numerous research projects there. She received no college credits for this work. It was undertaken to get experience and also to obtain new ideas that she might take back to Fort Worth. Eventually, petitioner stopped working for her doctorate. One reason for this decision was because her thesis subject was too broad. She was advised that it was so broad that it would require 10 years of research. Since 1954, petitioner has had the necessary state credentials for working as a visiting *226 teacher in the Fort Worth public schools. The additional education in 1958 at Stanford and T.C.U. would not qualify her for another credential for a higher or better job. She had every credential the Texas school system offered and there was no better or higher job to be had even with a doctorate. The following schedule indicates that there was no salary differential between a teacher with a master's degree and one with a doctor's until the sixteenth year. Evaluated
Bachelor's
Master's
Doctor's
Experience
Degree
Degree
Degree
0
$3850
$4050
$4050
1
3950
4150
4150
2
4050
4250
4250
3
4150
4350
4350
4
4270
4470
4470
5
4390
4590
4590
6
4510
4710
4710
7
4630
4830
4830
8
4750
4950
4950
9
4870
5070
5070
10
5000
5200
5200
11
5130
5330
5330
12
5260
5460
5460
13
5390
5590
5590
14
5520
5720
5720
15
5650
5850
5850
16
5980
17
6110
Annual increments - 3 at $100, 6 at $120, and 6 at $130. During the 1957-1958 school year, petitioner's yearly salary was $4,350 based on three years' evaluated experience, plus an additional $200 for working as a visiting teacher. While petitioner was on leave *227 of absence, the yearly increments in her salary continued to accrue. Petitioner obtained yearly leaves of absence from the Fort Worth public schools until September 1961. As of the date of this trial, petitioner had not returned to Texas. On her 1958 Federal income tax return petitioner deducted $2,035.69 as education expenses. This total included amounts for such items as tuition, books, transcripts, fees, supplies, transportation, meals and lodging. In the notice of deficiency respondent disallowed these expenses because "It is determined that the deduction for educational expenses claimed in your return in the amount of $2,035.69 is not allowable for the reason that you have not established your right to the deduction." Respondent also disallowed a claimed theft loss of $68. Petitioner has not contested this determination. After disallowance of the education expenses and the theft loss, petitioner's other itemized deductions amounted to $243.60. In order to allow the maximum deduction, respondent disallowed these expenses and allowed the standard deduction. Petitioner undertook her education during 1958 for the primary purpose of maintaining or improving the skills required *228 in her employment as a visiting teacher. For the taxable year 1958, petitioner was temporarily away from home. Opinion The question presented [11] is whether the cost of tuition and other expenditures incurred by petitioner in taking courses at T.C.U. and Stanford are deductible under section 162 of the 1954 Code, [12] as ordinary and necessary business expenses, or whether they are personal expenses which are nondeductible under section 262 of the 1954 Code. [13]
Expenditures made by taxpayer for her education are deductible if they are for education undertaken primarily for the purpose of maintaining or improving skills required by the taxpayer in her employment *229 or other trade or business. Section 1.162-5 (a)(1), Income Tax Regs., 1954 Code. We have found that petitioner took the additional courses in 1958 in order to maintain or improve skills she already had. We are satisfied that all of the courses petitioner took in 1958 were related to her duties as a visiting teacher. The additional education was not undertaken to obtain a new position or a substantial advancement in position, or primarily for the purpose of fulfilling general educational aspirations. Nor was the education undertaken for the purpose of qualifying petitioner for her intended profession. Petitioner already had a Master of Arts degree and held every teaching credential which the State of Texas offered in her field. The fact that education may result in a degree does not preclude the deduction where it was undertaken primarily for the purpose of maintaining or improving the skill required by the employee in his employment. Cosimo A. Carlucci, 37 T.C. - (January 15, 1962). Respondent has contended that, even if the tuition and other expenses connected with the education itself are deductible, the petitioner's traveling expenses )including meals *230 and lodging) while attending Stanford are not deductible. It is respondent's contention that petitioner's stay in California should be considered indefinite rather than temporary. We do not agree with the respondent's contention. Petitioner testified that her original intent was to stay in California only temporarily. [14] The record fully supports this testimony. By its very nature, petitioner's purpose in going to California was temporary. [15] Petitioner had put her furniture into storage in Fort Worth; she asked for and received successive leaves of absence; and she sought advice as to whether or not to stay in California to write her dissertation. [16]
*231 It is true that petitioner's stay in California has extended much past her original intent. However, what actually evolved is not necessarily controlling, as the respondent has recognized in Revenue Ruling 60-16, 1960-1 C.B. 58. [17] This is not to say that what starts out to be temporary cannot subsequently become indefinite or permanent. [18] We need not decide whether this was the situation in the instant case. Suffice it to say that petitioner was temporarily away from home in 1958. *232 We hold that respondent's determination was erroneous. Accordingly, petitioner is entitled to deduct the full amount she claimed as an educational expense. See section 1.162-5(d), Income Tax Regs., 1954 Code. [19] Cf. Revenue Ruling 60-97, 1960-1 C.B. 69, 75. [20]
After disallowing the educational expenses and theft loss, there remained itemized expenses of $243.60. Under these circumstances, petitioner would get a larger deduction *233 by taking the standard deduction. Respondent disallowed the remaining expenses and allowed petitioner the standard deduction. In light of our previous holding and since it is obvious that respondent was merely allowing petitioner the greatest deduction under the circumstances, we hold petitioner is also entitled to deduct those expenses. Decision will be entered under Rule 50. Footnotes
1. Psy. 356b, Rorschach Test. ↩
2. Ed. 357, Exceptional Children. ↩
3. Sec. Ed. 642, Student Teaching in the Sec. Sch. ↩
4. Math. 316, Trig. ↩
5. Psy. 243 Rorschach Methods. ↩
6. Psy. 363, Intelligence Testing of Individuals and Groups. 9-13-54 to 1-23-55. ↩
7. Psy. 463, Interest, Aptitude and Personality Testing. 1-25-55 to 5-26-55. ↩
8. Ed. 501, Human Development. 9-12-55 to 1-29-56. ↩
9. Ed. 340W, Supervision.↩
10. Summer 1958 Ed. 216 Stat. Anal. Ed. 450C Adv. Grad. Sem. Ed. 200 Hist. of Educ. Ed. 310 Soc. Found. Ed. Autumn 1958 Ed. 315 Cult. Transmisn. Ed. 448 Sem. Higher Ed. Ed. 115 Phy. Found. Ed. Ed. 450C Adv. Grad. Sem. Ed. 214 Cl. Learning↩
11. The parties are in agreement as to the amount of the expenses, the only issue is their deductibility. ↩
12. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *. ↩
13. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
14. Compare Rev. Ruling 60-16, 1960-1 C.B. 58, at p. 63: The expectation of the taxpayer as to the likely duration of an employment or stay at a particular place frequently presents a troublesome question of fact. This largely (but not wholly) subjective test is, nevertheless, an indispensable factor in the rule for differentiating between the temporary and the more permanent employment or stay. * * * ↩
15. Cf. Laurence P. Dowd, 37 T.C. - (December 4, 1961). ↩
16. The following excerpt is from a letter dated May 28, 1959, from Elden B. Busby, Assistant Superintendent of the Fort Worth school system: Peggy, it is a little difficult to advise you as to what you should do about staying there or returning to Fort Worth to do your study and dissertation. I am inclined to think that you would do better by staying there and doing part-time work as you indicate that it is possible for you to do and finishing everything before you return home. There is a tendency when one returns home to become distracted from his main interest by many things and, therefore, extending the time for completion of the work. If you are there, you are where your study habits are already established and in the academic environment of the University. It is possible that some problems could be worked out in the schools here, but it would take time to discover them and to perhaps work out means of carrying them out. I think I would strongly advise staying there until you have completed your work fully. I think the problems that we might have could be worked on by you after you return to your job here.↩
17. At page 63 the ruling states: The single fact that an employment or stay at a particular place is actually of relatively short duration is not in itself a sufficient basis for considering the employment or stay to be temporary, as will be evident from a simple illustration. If a taxpayer is transferred from City A to City B on a permanent assignment, the expenses of his meals and lodging after arrival in City B are nondeductible personal or living expenses. They cannot be converted into deductible traveling expenses simply because the assignment is soon terminated, even though the termination is for business rather than for personal reasons. * * * ↩
18. Arnold P. Bark, 6 T.C. 851, 855↩ (1946).
19. § 1.162-5 Expenses for education. * * *
(d) If a taxpayer travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals and lodging while away from home are deductible. ↩
20. 1961-1 C.B. 69, 75. A taxpayer undertaking education during an off-duty period or temporary leave of absence may deduct his expenses of travel, meals and lodging in addition to tuition costs, fees, cost of books, etc., if the expenses otherwise qualify for deduction and if there is a firm understanding or obligation that the taxpayer will return to his employment at the end of the off-duty period or the temporary leave of absence.↩