## JANDORF'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13, Docket 20930.

United States Court of Appeals
Second Circuit.

Dec. 21, 1948.

Marvin Lyons, of New York City, George S. Fuller and Sumner H. Babcock, both of Boston, Mass., and D. Bret Carlson, of New York City, for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., and Robert M. Weston, George A. Stinson, Ellis N. Slack, and Maryhelen Wigle, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

SWAN, Circuit judge.

This appeal involves the federal estate tax of the estate of Karl Jandorf, a non-resident alien not engaged in business in the United States. At the date of his death on November 19, 1943, he was the beneficial owner of $150,000 of United States bonds physically located here, of which $75,000 were issued after March 1, 1941. The question for decision is whether the principal, plus accrued interest, of the bonds issued after March 1, 1941 was prop-

5

erly includible in the decedent's gross estate. The Commissioner ruled that it was, producing the deficiency in suit, and the Tax Court, confirmed his ruling. The petitioner contends that these bonds are exempt from the federal estate tax by virtue of section 4 of the Victory Liberty Loan Act of March 3, 1919, which appears at 31 U.S.C.A. § 750. It relies upon the legislative history of this statute, a judicial determination thereof in 1927, and the long continued administrative practice of the Treasury Department prior to amendment of its Regulations in 1941.

Section 4 of the Victory Liberty Loan Act of March 3, 1919, 40 Stat. 1311, reads as follows:

"Sec. 4. That section 3 of the Fourth Liberty Bond Act is hereby amended to read as follows:

"'Sec. 3. That, notwithstanding the provisions of the Second Liberty Bond Act or of the War Finance Corporation Act or of any other Act, bonds, notes, and certificates of indebtedness of the United States and bonds of the War Finance Corporation shall, while beneficially owned by a nonresident alien individual, or a foreign corporation, partnership, or association, not engaged in business in the United States, be exempt both as to principal and interest from any and all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States or by any local taxing authority.'"

Consideration of the meaning of this statute should start with the First Liberty Bond Act of April 24, 1917, 40 Stat. 35. Section 1 thereof, 31 U.S.C.A. § 746, provided that the bonds issued thereunder "shall be exempt, both as to principal and interest, from all taxation, except estate or inheritance taxes, imposed by authority of the United States, or its possessions, or by any State or local taxing authority; * * *."

■ Section 7 of the Second Liberty Bond Act of September 24, 1917, 40 Stat. 291, 31 U.S.C.A. § 747, provided a similar exemption "from all taxation now or hereafter imposed" except (a) estate or inheritance taxes, and (b) surtaxes, excess prof-

its and war-profits taxes. It should be noted that estate or inheritance taxes are excises on the bondholder's privilege of transferring the bonds at death, while surtaxes, excess profits and war-profits taxes are direct property taxes; and that the legislators apparently thought it necessary to except both classes in order to take them out of the general words of exemption. The Third Liberty Bond Act of April 4, 1918, 40 Stat. 502, 31 U.S.C.A. §§ 752, 754, 765, 766, 771, 774, amended certain sections of the Second Liberty Bond Act but not section 7. These three Acts, while granting certain exemptions from taxation treated all bondholders alike for purposes of taxation, whether they were aliens or citizens, resident or nonresident.

The idea that a special exemption should be granted to foreign investors in United States bonds first appeared in Section 3 of the Fourth Liberty Bond Act of July 9, 1918, 40 Stat. 845. This provided:

"Sec. 3. That notwithstanding the provisions of the Second Liberty Bond Act, as amended by the Third Liberty Bond Act, or of the War Finance Corporation Act, bonds and certificates of indebtedness of the United States payable in any foreign money or foreign moneys, and bonds of the War Finance Corporation payable in any foreign money or foreign moneys exclusively or in the alternative, shall, if and to the extent expressed in such bonds at the time of their issue, with the approval of the Secretary of the Treasury, while beneficially owned by a nonresident alien individual, or by a foreign corporation, partnership, or association, not engaged in business in the United States, be exempt both as to principal and interest from any and all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States, or by any local taxing authority."

■ It will be observed that the exemption "from any and all taxation" granted to bonds payable in foreign money contained no exception of estate or inheritance taxes or of surtaxes, excess profits or war profits taxes. Section 3 of the Fourth Liberty Bond Act was amended by section 4 of the Victory Liberty Loan Act of

March 3, 1919, 40 Stat. 1311, already quoted. This amendment struck out the requirements that the exempted bonds be payable in foreign money; in other words, it extended the exemption to all United States bonds, whether or not payable in foreign money, while beneficially owned by a nonresident alien not engaged in business in the United States. At the same time section 1 of the Victory Liberty Loan Act, 40 Stat. 1309, 31 U.S.C.A. § 753, which added a new section to the Second Liberty Bond Act, provided that "the notes herein authorized" may be issued "exempt, both as to principal and interest, from all taxation (except estate or inheritance taxes)," and pursuant to subdivision (b) (2) graduated income taxes might also be excepted. The use of the same words of exemption in different sections of the same statute with an expressly declared exception in one case and not in the other, is a strong indication that the Congress thought the exception necessary in order to exclude estate and inheritance taxes from the broad words of the exemption provision. And this is borne out by the remarks of Senator Simmons, chairman of the Senate Finance Committee, in connection with section 3 of the Fourth Liberty Bond Act as reported in 56 Congressional Record 8691.[1] It is further substantiated by the proposal of Congressman Parker of New Jersey to eliminate the qualifying words "except estate or inheritance taxes" from section 1 of the Victory Liberty Loan Act as an inducement to wealthy investors to lend their money to the United States.[2] The

---

[1] "Mr. Thomas: I desire to ask the Senator from North Carolina what the provision of the law is with reference to the taxation of bonds which are held by foreign nonresidents?

"Mr. Simmons: The present law imposes the same tax upon bonds owned by nonresident aliens that it does upon bonds owned by citizens of this country.

"Mr. Thomas: I was unable to attend the meetings of the Finance Committee having consideration of this bill, and I therefore would like to be informed why the change is now proposed whereby this exemption is to take effect?

"Mr. Simmons: The Senator from Colorado will recall that in the last liberty-bond bill we inserted a provision authorizing the issuance of a certain number of those bonds payable in foreign money or moneys. That was done for the purpose of stabilizing exchange and for the additional purpose of furnishing an inducement or incentive to foreign investors to buy these bonds. The testimony before the Ways and Means Committee showed that it was impracticable to induce foreigners to invest in these bonds if they were subject to Federal and State taxation, and if we were to secure such purchasers for these bonds from abroad it would be necessary to relieve them from taxation.

"Mr. Thomas: May I ask whether any of the former issues were purchased with foreign money or by foreign investors?

"Mr. Simmons: I think not; but I understand none were so sold.

"Mr. Thomas: In other words, the purpose of section 3 is to place all bonds upon an equality with regard to the exemption feature?

"Mr. Simmons: All bonds sold to nonresident aliens, so long as the beneficial interest in the bond is owned by them—so it is a corporation.

"Mr. Thomas: As well as those which are to be authorized by this bill?

"Mr. Simmons: Yes. The bonds that are authorized by this bill to be paid for in foreign money and sold to foreigners, to nonresident aliens, would not be subject to taxation at all, while the bonds sold in our own markets are subject to the surtax and the inheritance tax."

[2] "Mr. Parker: * * * It has been thought a great thing to relieve the first series of these notes from all taxes except estate or inheritance taxes. There are in this country several gentlemen worth a great many million dollars, one at least worth several hundreds of millions of dollars, and they are often not young, but look to the time soon when they may die and when that inheritance tax will have to be paid. I have forgotten how much it is.

"Mr. Kitchin: Twenty-five per cent is the highest.

"Mr. Parker of New Jersey: That is enough so that if we want these men to give their millions and hundreds of millions to our loans, let the law provide that loans shall bear interest at between 2 and 3 per cent, not less than 2 and not more than 3, but that they shall be free from taxation, interest and principal, that estate and inheritance taxes shall not affect them, and that the credit and obligations of the United States shall never be impeached by any foreign country, or by any market, and, least of all, by itself." 57 Cong.Rec. 4289-90.

discussion and rejection of this amendment is evidence that the members of the House were aware that the inclusion or omission of this exception clause was controlling upon whether or not the exemption embraced the estate tax. And the omission of the exception in section 4 which came up before the House immediately after the vote on the Parker amendment must therefore be regarded as evidence of a deliberate intention to make the exemption applicable to the estate tax in the case of bonds, notes and certificates of indebtedness of the United States beneficially owned by nonresident aliens.

As early as 1920 the Internal Revenue Bureau had taken the position that United States bonds held in trust for a nonresident alien at the time of his death should not be included in the decedent's gross estate for the purpose of the estate tax.[3] And on January 5, 1928 shortly after Judge Knox's decision in Farmers' Loan & Trust Co. v. Bowers, D.C.S.D.N.Y., 22 F.2d 464, that United States bonds owned by a nonresident alien not engaged in business in the United States were exempt from the federal estate tax,[4] Treasury Regulation 70, Article 11 was amended by adding the following new sentence:

"In case the decedent was a nonresident alien not engaged in business in the United States, bonds, notes and certificates of indebtedness of the United States, and bonds of the War Finance Corporation, beneficially owned by such alien, should not be included."

This provision continued substantially unchanged until 1941, when it was amended[5] by adding at the end "however, bonds, notes, and certificates of indebtedness of the United States, issued on or after March 1, 1941, which such decedent beneficially owned, should be included in the gross estate."[6]

Despite this legislative and administrative history, the respondent contends that section 4 of the Victory Liberty Loan Act exempting the bonds "from any and all taxation" does not include, and was not intended by Congress to include, the federal estate tax. The argument rests on the distinction between a direct tax on property and an estate tax, which is an excise tax. The respondent urges that it is the principal and interest of the bonds as property—not the bondholder's privilege of passing them on at death, which the statute exempts. He relies on Murdock v. Ward, 178 U.S. 139, 20 S.Ct. 775, 44 L.Ed. 1009, relating to the federal inheritance tax imposed by the War Revenue Act of 1898, 30 Stat. 448, and Plummer v. Coler, 178 U.S. 115, 20 S.Ct. 829, 44 L.Ed. 998, relating to the New York inheritance tax. Those cases support the proposition that a provision exempting United States bonds from taxation as to principal and interest, *without more*, relates exclusively to direct taxation of them as property. The cited cases would be persuasive, if Congress had not shown an intent to use the phrase "exempt * * * from all taxation" to include estate taxes by expressly excepting them in one section of the statute and not in the other, and if the Treasury Department had not for 20 years construed the statute as granting exemption with respect to the estate tax.

The Commissioner has taken two completely contradictory positions in exempting bonds issued prior to March 1, 1941, while denying exemption to those issued after that date. Either the Victory Liberty Loan Act did not grant exemption with respect to the federal estate tax, in which case the Treasury Regulations prior to 1941 were invalid, or it did grant such exemption, in which case there was no legal justification for the taxing officials to differentiate between bonds issued before March 1, 1941 and those issued after that date. For reasons already stated we believe that the statute discloses the intent of Congress to grant exemption from the federal estate tax with respect to bonds

---

[3] 1920 Corporation Trust Company's War Tax Service, §§ 322-323.

[4] The Government took no appeal from this decision. This taxpayer appealed from adverse rulings on other issues, reported in D.C., 15 F.2d 706, and its ap- peal was sustained. Farmers' Loan & Trust Co. v. Bowers, 2 Cir., 29 F.2d 14. Of course the exemption of the bonds was not an issue on the appeal.

[5] T. D. 4118, VII-I Cum. Bull. 316.

[6] Treas. Reg. 105, Sec. 81.13 (1942).

468

beneficially owned by a nonresident alien decedent. Sections 4, 31 U.S.C.A. § 742a, and 5 of the Public Debt Act of 1941, 55 Stat. 9, upon which the Treasury purports to base its volte face as to bonds issued after March 1, 1941,[7] dealt only with income taxes and has no bearing, in our opinion, on the extent of the exemption granted by the Victory Liberty Loan Act of 1919 with respect to estate or inheritance taxes. Consequently the 1941 change in Article 81.13 of the Regulations finds no statutory support and is invalid.

The order is reversed and the cause remanded.