**CITY OF WOODWAY, McLENNAN COUNTY, TEXAS,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 81–1076.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1982.

Beard & Kultgen, David B. Kultgen, Waco, Tex., for plaintiff-appellant.

Hugh P. Shovlin, Asst. U. S. Atty., San Antonio, Tex., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Chief, Appellate Sect., Ann Belanger Durney, Steven I. Frahm, Tax Division, U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before BROWN, GOLDBERG and POLITZ, Circuit Judges.

GOLDBERG, Circuit Judge:

In this tax refund suit, we are asked whether a corporation may escape tax liability for depreciation recapture by virtue of an Internal Revenue Code provision [1] which creates an exemption for income which is derived from a public utility and which accrues to a municipality.

Appellant, the City of Woodway, became the sole shareholder of a private water-supply company. Appellant's argument that the company's income is exempt from taxation is based on a complex series of transactions which includes purchase of the water-supply company's stock, amendment of the corporation's charter to give it the characteristics of a public utility, distribution of the corporation's assets in liquidation, and finally, dissolution of the corporation. By urging that we honor the form of these transactions over their substance, taxpayers teeter on the thin line between a legitimate attempt to avoid taxes and an illegitimate attempt to escape them. However, we are not required to pass on the validity of this balancing act because we find that even if we exalt the form of this transaction over its substance, the income in question does not fall within the Code's exemption for income accruing to a municipality from a public utility. Accordingly, we affirm the district court's judgment in favor of the United States.

FACTS AND PROCEEDINGS BELOW

The parties have stipulated to the relevant facts. Midway Water Company ("Midway") was a closely-held [2] Texas corporation which owned and operated a water supply system serving the residents of the City of Woodway in McLennan County, Texas. Woodway ("the City") is a city organized under the laws of Texas. In 1973, the City Council decided that the City should become the owner of the water system which served its residents. Accordingly, the Council resolved to purchase Midway. The City's representatives approached Midway's shareholders to discuss the acquisition. Midway's shareholders entered into a written agreement with the City on April 22, 1974 providing that the shareholders would sell their Midway stock

---

1. Section 115 of the Internal Revenue Code of 1954, 26 U.S.C. § 1 *et seq.* Unless otherwise indicated, all statutory references are to the 1954 Code.

2. Eight shareholders owned all of Midway's stock.

to the City for $1,700,000. The agreement recited the City's intent to dissolve Midway upon acquiring its stock. To accomplish this end, the shareholders agreed to deliver the resignations of Midway's officers and directors at the closing. The shareholders also agreed to indemnify the City against any tax liability arising out of the dissolution of Midway.[3]

June 5, 1974, was a busy day for the parties to the transaction. On that day, the shareholders assigned all of Midway's stock to the City and all Midway officers and directors resigned. In exchange, the City paid the shareholders cash and bonds totaling $1,700,000. An amount representing Midway's potential tax liability arising from its imminent dissolution was withheld from the purchase price and placed in an escrow account.

The City's mayor and city manager convened a shareholder meeting with the City now acting as the sole shareholder of Midway. As the City's representatives, the mayor and city manager elected various city officials as the new directors of Midway. The newly-elected Board of Directors passed a resolution transferring all of Midway's property, other than cash, to the City in liquidation. Midway's charter was amended to provide, inter alia, that the corporation's sole purpose was provision of a water supply to the City, and that all of its assets and income would inure to the City's benefit. Finally, Midway was dissolved.

The City filed an income tax return on behalf of the corporation covering the period from its last return up to the date of dissolution. The return was signed by the mayor of Woodway as President of Midway. After an audit, the Internal Revenue Service determined that Midway owed additional tax on unreported ordinary income from recapture of depreciation, and that the company also owed unreported recapture of investment credits. Thus, a total of $159,065.02 in additional tax was assessed against Midway. The amount assessed was paid by the City, as the sole transferee of Midway's assets. The City paid the taxes out of the escrow fund, as provided in the City's agreement with Midway's former shareholders. Woodway then filed a claim for a refund on behalf of Midway. When the claim was disallowed, the City brought this refund action.

The case was tried in the United States District Court for the Western District of Texas on stipulated facts.[4] In district court, the Government made two alternative arguments. First, the Government contended that because the depreciation recapture income never accrued from Midway to the City, section 115 of the Code did not exempt Midway from tax liability for depreciation recapture.[5] Secondly, the Government argued that the court should disregard the form of the transaction by which the City acquired Midway, and find that the transaction was in substance a sale of Midway's assets to the City, rather than a sale of stock.

The district court found in favor of the Government on its first argument, without

---

3. The agreement provided:
   Shareholders agree to pay on demand and to hold [Woodway] harmless from all liability, including penalty and interest, as transferee or otherwise, for ... any income taxes ... incurred by Midway by virtue of said corporate liquidation ...
   The parties agreed to estimate the potential tax liability arising from the liquidation, to withhold that amount from the City's payment to Midway's shareholders, and to place the amount in an escrow account pending the conclusion of any litigation regarding taxes. If taxes were ultimately due, they were to be paid from the escrow account. If a court determined that no taxes were due, or if no litigation

occurred and the statute of limitations expired, the escrow funds would be paid to Midway's shareholders and any interest earned would be paid to the City.

4. Jurisdiction was based on 28 U.S.C. § 1346(a).

5. The Government also argued that section 115 did not exempt Midway from taxation on investment credit recapture. On appeal, the City conceded its liability for investment credit recapture, see Brief of Appellants at 4–5, thereby removing that issue from this Court's consideration.

reaching the sale of assets question.[6] The City then brought this appeal.

### 1. Section 115

Taxpayer takes the position that the depreciation recapture income occasioned by Midway's liquidation is exempt from taxation by virtue of section 115. That section provides:

SEC. 115. INCOME OF STATES, MUNICIPALITIES, ETC.

Gross income does not include—

(1) income derived from any public utility or the exercise of any essential government function and accruing to a State or any political subdivision thereof, or the District of Columbia. . . .

Thus, four requirements must be met before income is tax-exempt under section 115. The income must (1) "derive from" an entity which is (2) a "public utility"; and the income must (3) "accrue to" an entity which is (4) a state or political subdivision thereof.[7]

In considering section 115's application to the instant case, we must heed the admonition that a statute granting a tax exemption should be strictly construed. *E.g., United States v. Stewart*, 311 U.S. 60, 71, 61 S.Ct. 102, 109, 85 L.Ed. 40 (1940). Instead of approaching this case with a generous and open-handed attitude, we must proceed in the guise of Scrooge, balefully scrutinizing taxpayer's claim to an exemption with a miser's eye. Unless the income sought to be exempted meets each and every requirement of section 115, appellant must leave empty-handed.

### 2. Depreciation Recapture

Generally, a corporation realizes no gain on assets which are disposed of in a liquidating distribution to its own shareholders. *See* section 336. There is an exception to this rule, however. If a corporation distributes assets in liquidation which have been depreciated below their market value, the corporation realizes depreciation recapture income at the time of its liquidation. *See* section 1245(a). Past depreciation deductions are recaptured as additions to ordinary income in order to avoid conversion of deductions from ordinary income into capital gain. *See Troy State University v. C.I.R.*, 62 T.C. 493, 497–498 (1974).[8] A corporation is charged with depreciation recapture when it is liquidating so that previous deductions do not escape taxation at the corporate level. *See* Bittker & J. Eustice, *Federal Income Taxation of Corporations and Shareholders*, ¶ 11–61 (4th ed. 1979).[9]

Thus, under section 1245(a), prior depreciation deductions are treated as additions to ordinary income at the time a depreciated asset is disposed of. However, the addition to ordinary income mandated by section

---

**6.** Originally, the district court entered summary judgment in favor of the United States. The Government filed a motion for relief from this judgment on the grounds that the judgment was mistakenly entered under Fed.R.Civ.P., Rule 56, pertaining to summary judgments; rather than Rules 52(a) and 58(1), pertaining to actions tried upon the facts without a jury. The district court then filed a motion with this Court for leave to correct the judgment. The motion was granted. Accordingly the district court vacated its earlier summary judgment and entered judgment for the Government based on findings of fact and conclusions of law.

**7.** The City's status as a political subdivision of the State of Texas is not in dispute.

**8.** A numerical example may be helpful. Suppose a corporation buys an asset for $100 and depreciates the asset at the rate of $10 per year for three years. For years one through three, it can annually deduct $10 from its ordinary income. In year four, the corporation sells the asset for $100. The corporation must add $30 to its ordinary income in year four, so that the past depreciation deductions are recaptured as ordinary income.

**9.** Although it is the corporation which incurs tax liability when it liquidates, it is frequently the shareholders who actually pay the tax. This is because the corporation has no means with which to pay taxes after transferring all of its assets to its shareholders. The shareholders, as transferees of the assets, become liable for the corporation's taxes. *See generally* J. Mertens, *The Law of Federal Income Taxation*, § 53.15 (1977) (discussing shareholder liability in corporate distributions). In this case, the City, as sole transferee of Midway's assets, inherited the corporation's liability for tax on recaptured depreciation deductions.

1245(a) is not an addition to the taxpayer's real economic wealth; rather it is an addition to the taxpayer's tax liability. Real economic wealth was realized in the years during which the taxpayer paid less taxes as a result of taking depreciation deductions from ordinary income.

### 3. Depreciation Recapture and Section 115

Once the nature of additions to income required by depreciation recapture is understood, it becomes exceedingly difficult to fit such income within the framework of section 115. The City's claim to section 115 exemption is based on the sequence of events which transpired after the City purchased Midway's stock. After purchasing the stock of Midway, the City amended the corporation's charter to give it the characteristics of a public utility.[10] Midway was then dissolved, and its assets were distributed to the City. Because it had distributed depreciated assets, Midway was required under section 1245, to recapture the depreciation through additions to ordinary income. Therefore, according to the City, "income resulting from the dissolution was income to City from a public utility and exempt from ... taxation under § 115(a)." Brief of Appellants at 6.

■ Taxpayer's argument is certainly ingenious.[11] However, to qualify for exemption under section 115, the City must demonstrate that the income was *derived from* a public utility and *accruing to* the City. This appellant fails to do.

### A. Was the income "derived from" a public utility?

As an initial matter, we question whether the City had authority under Texas law to effectuate the charter amendments which purported to transform Midway from a private corporation into a public utility.[12] Even assuming that Midway was validly transformed into a public utility, it is undisputed that Midway's life as a public utility was exceedingly evanescent. Immediately after amending Midway's charter, the City, as sole shareholder, voted to dissolve the corporation/public utility. Clearly, additions to Midway's income from depreciation recapture were not "derived from" Midway's fleeting moments as a public utility.

---

**10.** The amendments provided, in relevant part, that the sole purpose of Midway would be the provision of a water supply to the inhabitants of the City, and that all of Midway's assets and income would inure to the benefit of the City.

The City also argues that the charter amendments made Midway into an "instrumentality" of the City, and that as an "instrumentality," Midway is exempt from taxation regardless of section 115. However, appellants cite no authority to support this proposition. We assume that appellants intend a reference to the rule that the federal government may not tax the means and instrumentalities of state government. *See Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 399, 52 S.Ct. 443, 444, 73 L.Ed. 815 (1932). Without questioning the validity of the *Burnett* doctrine, we find it inapplicable to the instant case. The charter amendments did not suffice to transform Midway into an instrumentality of state government for tax purposes. A private corporation such as Midway is not an instrumentality of state government merely because the corporation provides water service to a city's inhabitants. *See, e.g., Citizens Water Co. v. C. I. R.*, 87 F.2d 874, 876–878 (8th Cir. 1937), *cert. denied*, 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536 (1937).

**11.** "A dog who thinks he is man's best friend is a dog who obviously has never met a tax lawyer."
Fran Lebowitz, *Social Studies* (Random House, New York: 1981), p. 56.

**12.** Under the Texas Constitution, a municipal corporation may not own stock in a private corporation. *See* Article XI, § 3 of the Texas Constitution. After a decision of the Texas Supreme Court, a subdivision of the State of Texas may acquire the stock of a private corporation for the sole purpose of immediately dissolving the corporation and thereby acquiring its assets. *See Brazos River Authority v. Carr*, 405 S.W.2d 689 (Tex.1966). Thus, as the City acknowledges, it was prohibited from buying Midway's stock for the purpose of operating the water system as a corporation. *See* Supplemental Brief of Appellant at 11. It could only acquire the stock for the limited purpose of dissolving Midway. The *Brazos River* decision is a narrowly-drawn exception to the Constitutional prohibition against municipal ownership of a private corporation. Thus it is unclear whether, under *Brazos*, the City had authority to amend Midway's charter in addition to dissolving the corporation.

It is true that the event which triggered the additions to Midway's income from depreciation recapture was the distribution of Midway's assets in liquidation, and that this liquidation occurred at a time when Midway had already metamorphasized (perhaps validly) into a public utility. However, it does not necessarily follow that the depreciation recapture income was "derived from" Midway's existence as a public utility. Taking into account the operation of section 1245(a), the income additions must instead be traced back to the years in which Midway, then a private corporation, took depreciation deductions from ordinary income. It was during these years that Midway's wealth was increased in the form of lowered taxes.[13] Thus, the additions to income required at the time of Midway's dissolution were "derived from" its past operations as a private corporation, and not from its few moments as a "public utility."

*B. Did the income "accrue to" the City?*

Section 115 does not exempt from taxation all income of a public utility which is owned in whole or in part by a municipality. Rather, it exempts only that portion of the public utility's income which actually "accrues" to the municipal shareholder. *See Citizens Water Co. v. C.I.R.*, 87 F.2d 874, 878 (8th Cir. 1937), *cert. denied*, 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536 (1937).

■ The term "accrual" in the context of section 115 has been given a strict, even cruel, construction. Thus, the courts have held that income is not exempt under section 115 until it is actually received by the municipal shareholder in the form of dividends. *See Troy State University v. Commissioner*, 62 T.C. 493, 496 (1974); *Omaha Public Power District v. O'Malley*, 232 F.2d

805, 810 (8th Cir. 1956), *cert. denied*, 352 U.S. 837, 77 S.Ct. 57, 1 L.Ed.2d 55 (1956); *Bear Gulch Water Co. v. Commissioner*, 116 F.2d 975, 977 (9th Cir. 1941), *cert. denied*, 314 U.S. 652, 62 S.Ct. 99, 86 L.Ed. 523 (1941); *Citizens Water Co. v. Commissioner, supra.* It has also been suggested that the requirements of section 115 may be satisfied when there is an accrual of income in an accounting sense. *See City of Bethel v. U. S.*, 594 F.2d 1301, 1302–03 (9th Cir. 1979) (if income is recorded as a debit on the financial statements of a utility, and as an asset on a city's books, the income may have accrued to the city) (dicta). However, by any definition of the term "accrual," the courts have held that income does not accrue from a corporation to a municipality merely because the corporation is completely owned and controlled by the city. *See, City of Bethel v. U. S., supra* at 1302–03; *Omaha Public Power District v. O'Malley, supra* at 810; *Bear Gulch Water Co. v. Commissioner, supra* at 977. It is well-established that a corporation is an entity separate from its shareholders, and its separate status will not be disregarded in the absence of sham or other transactions. *E.g., Moline Properties v. Commissioner*, 319 U.S. 436, 438–439, 63 S.Ct. 1132, 1133–34, 87 L.Ed. 1499 (1943). Thus, the income of . a public utility does not accrue to its municipal shareholder absent some kind of actual or bookkeeping transfer of the funds from one entity to the other.

■ Appellants cannot demonstrate any actual or bookkeeping transfer of income from Midway to the City. Instead, appellants point to the amendment of Midway's charter which provides that all assets and income of Midway shall "inure" to the sole

---

**13.** It is interesting to note that Midway's former shareholders, who received the benefit of the corporation's lowered taxes, are actually paying the tax on the recaptured depreciation. Although the City of Woodway was liable for the taxes as transferee of Midway's assets, the City paid the taxes out of the escrow fund set up for this purpose. *See* Note 3, *supra.* Thus, the tax was effectively paid by the former shareholders, since it was subtracted from the money they received from the City from their

Midway stock. Of course, these particular arrangements between the City and Midway's former shareholders have no bearing on the legal issues in this case. However, the arrangements do accord with our analysis of the economic reality of the transaction. Midway's former shareholders received the benefit of the depreciation deductions taken by Midway, and it is the former shareholders who ultimately pay the tax on the recaptured depreciation.

benefit of the City. Appellants ask us, in effect, to find that income of a corporation which inures to the benefit of a shareholder thereby "accrues" to the shareholder under section 115.

In *Omaha Public Power District v. O'Malley, supra,* the Court considered a similar argument. In that case, taxpayers pointed to a Treasury Regulation from 1918 exempting from taxation the income of a public utility which inured to the benefit of a state. *Id.* at 809. The Court found that the language of the Treasury Regulation was superseded by the language of the Code, which requires that a public utility's income "accrue" to the state or political subdivision. *Id.* We agree with the conclusion reached in *Omaha Public Power District, supra.* Congress could have written section 115 to exempt all income *inuring* to the benefit of a city; it did not. The language of the statute requires that the income *accrue* to the City. Recalling our role as Scrooge in construing a Code section which exempts income from taxation, we must refuse to expand the meaning of the term accrual.[14]

### C. The Battle of the Regs.

Appellant has failed to show that additions to Midway's income required for depreciation recapture either "derived from" a public utility or "accrued to" the City. Nevertheless, appellant maintains that the income is exempt under that section. In support of this argument, appellant cites

§ 1.1245–6(e) of the Treasury Regulations on Income Tax. That section provides:

> *Exempt Income.* The fact that section 1245 provides for recognition of gain as ordinary income does not change into taxable income any income which is exempt under section 115 (relating to income of states, etc.) . . .

According to the City, this Regulation necessarily contemplates exemption of income occasioned by the dissolution of a corporation owned by a political subdivision, since a political subdivision would have no reason to depreciate property utilized to produce income exempt under section 115.

We disagree. 26 CFR § 1.1245–6(e) is better understood as an attempt to prevent conflict between section 115 and section 1245 caused by the definition of "property" contained in § 1.1245–3. Under subpart (a) of that section, the recapture provisions apply to any property "which is or has been property of a character subject to the allowance for depreciation provided in section 167." Thus, the Regulation is intended to prevent mandatory recapture of depreciation with regard to property which was "of a character subject to" depreciation, yet was not actually depreciated because it was owned by a tax-exempt entity. *See* Brief of Appellee at 20–21, n.11.

We find that § 1.1245–2(a)(8) of the Treasury Regulations supports the conclusion that Midway should not escape taxation on depreciation recaptured from assets

---

**14.** Appellant cites *Decatur Water Supply Co. v. C. I. R.,* 88 F.2d 341 (7th Cir. 1937) and *Keokuk & Hamilton Bridge v. C. I. R.,* 180 F.2d 58 (8th Cir. 1950), for the proposition that income which inures to the benefit of a political subdivision is tax-exempt under section 115. In those cases, it was held that income received by the corporate owner of a water-supply facility (*Decatur*) or a bridge (*Keokuk*) should not be attributed to the corporation for tax purposes when the income was mandatorily used to benefit a municipal stockholder. To the extent that the decision in *Decatur* disregards the distinction between receipt of income by the corporation and by its shareholders, the decision must be regarded as invalid in light of the Supreme Court's later holding in *Moline Properties, Inv. v. C. I. R., supra* (corporate entity will not be disregarded absent fraud or other

circumstances). In *Keokuk & Hamilton Bridge v. C. I. R., supra,* the Eighth Circuit chose to disregard the corporate form of an entity which was organized for the sole purpose of conveying a bridge as a gift to the city of Keokuk. *Id.* at 63. The case was decided under a rule of construction which required that the substance of an arrangement would prevail over its form if necessary to effectuate the purpose of a charitable legacy. *Id.* We can discern no charitable purpose in the instant case which would require us to disregard the corporate form of Midway. Both *Decatur* and *Keokuk* were decided on the basis of general receipt of income principles, and not under section 115 or its predecessors. Therefore, neither case is persuasive authority as to the meaning of the term "accrual of income" under section 115.

owned by the corporation prior to the City's acquisition of its stock. Section 1.1245–2(a)(8) provides in relevant part:

> *Exempt Organizations.* In respect of property disposed of by an organization which is or was exempt from income taxes ... adjustments reflected in the adjusted basis ... shall include only depreciation or amortization allowed or allowable ... in computing taxable income of the organization (or a predecessor organization) for a period during which it was not exempt....

■ Thus, an organization's tax-exempt status on the day it disposes of a depreciated (or depreciable) asset is not determinative of the organization's tax liability for depreciation recapture. Instead, we look into the past to see if the organization was tax-exempt during the years in which it owned the asset. The organization must recapture depreciation for any period of time during which it owned the asset and was *not* tax-exempt. Similarly, the organization must recapture depreciation on assets which it received from a predecessor organization which was not tax-exempt. Absent such a rule, non-tax-exempt organizations could escape tax liability for depreciation recapture by conveying property to a tax-exempt organization.

In this case, taxpayer attempted to escape tax liability for depreciation recapture on assets owned by Midway, a private corporation, by transforming Midway into a public utility and then claiming the tax exemption provided in section 115 for the income of public utilities accruing to a municipality. We conclude that the "great escape" is not viable, since Midway's status as a public utility at the time it distributed its assets is not determinative of the corporation's liability for tax on depreciation recapture. Instead, depreciation recapture must be determined by looking to the status of Midway at the time it depreciated the assets. *See Troy State University, supra;* cf. 26 CFR § 1.1245–3(a). Since Midway was a private corporation during that period, it may not now take advantage of section 115 to avoid tax liability on the recaptured depreciation.

## CONCLUSION

Even if we respect the formal structure of this transaction as a sale of Midway stock to the City, section 115 does not exempt from taxation additions to Midway's income required for depreciation recapture. Thus, we affirm the judgment of the district court without reaching the question of whether the formal structure of the transaction is valid if its purpose was to at least avoid, if not evade, tax liability.

The judgment of the district court is AFFIRMED.