Estate of Luis G. Egger, Deceased, James H. Powell, Executor, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 39777-86.      Filed September 23, 1987.

*Herbert Hoover Chaice*, for the petitioner.
*Kevin C. Reilly, Louis B. Jack*, and *Vincent J. Juliano*, for the respondent.

## OPINION

Sterrett, *Chief Judge*: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to the provisions of section 7456(d), I.R.C. 1954 (redesignated as sec. 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1556, 100 Stat. 2755) and Rule 180 et seq. The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, *Special Trial Judge*: The issue in this case is whether certain so-called project notes issued under the United States Housing Act of 1937, as amended, are includable in a decedent's gross estate for Federal estate tax purposes.

### FINDINGS OF FACT

The facts are undisputed. Luis G. Egger (decedent) died testate December 21, 1983. Letters testamentary were issued to James H. Powell on February 21, 1984, by the Surrogate's Court of New York County. At his death, decedent owned certain so-called project notes, issued by State housing agencies under the United States Housing Act of 1937, as amended, that had a fair market value of $844,193.25. On September 21, 1984, the executor (petitioner) filed a Federal estate tax return. That return did not include the value of the project notes owned by decedent at death. Respondent, by a notice of deficiency dated September 4, 1986, determined a deficiency against petitioner in the amount of $411,192.30. The only adjustment was the inclusion of the value of the project notes in the gross estate. On October 7, 1986, petitioner filed a timely petition with this Court. The case stands submitted to us on cross-motions for summary judgment.

OPINION

Code section 2001 [1] imposes a tax on "the taxable estate of every decedent who is a citizen or resident of the United States." Code section 2051 provides that "value of the taxable estate" is determined by deducting from the "value of the gross estate," the deductions allowed in part IV of subchapter A of chapter 11. The value of the gross estate includes the value of all property to the extent of the interest therein of the decedent at the time of his death. Code secs. 2031 and 2033. As the Supreme Court noted, "The transfer upon death is taxable, whatsoever the character of the property transferred and to whomsoever the transfer is made." *Greiner v. Lewellyn*, 258 U.S. 384, 387 (1922). Thus, under the literal language of these Internal Revenue Code provisions there is no justification for the exclusion of the value of the project notes from the decedent's gross estate.

On the other hand, there is no question that Congress can exempt property otherwise within the purview of sections 2031 and 2033. The Supreme Court and other courts, however, have consistently ʀadhered to the principle that "exemption from taxation must be clearly made out" and not rest on "doubt or ambiguity" (*Bank of Commerce v. Tennessee*, 161 U.S. 134, 146 (1896), on rehearing 163 U.S. 416, 423 (1896)). It "cannot rest upoñ mere implication." *United States v. Stewart*, 311 U.S. 60, 71 (1940). Accordingly, as Judge Goldberg has stated, "we must proceed in the guise of Scrooge, balefully scrutinizing taxpayer's claim to an exemption with a miser's eye." *City of Woodway, McLennan County, Texas v. United States*, 681 F.2d 975, 978 (5th Cir. 1982).

An unbroken line of decisions of the Supreme Court and other courts have held that a statutory provision that obligations are exempt from "all taxation" does not bar the imposition of estate, inheritance, or gift tax upon the transfer of those obligations. See, e.g., *Plummer v. Coler*, 178 U.S. 115 (1900) (State inheritance tax on U.S. bonds); *Murdock v. Ward*, 178 U.S. 139 (1900) (Federal inheritance

---

[1] All Code statutory references are to the Internal Revenue Code of 1954 as amended and as in effect during the year in issue; except as noted, other section references are the the Housing Act of 1937.

tax on U.S. bonds); *Greiner v. Lewellyn, supra* (Federal estate tax on municipal bonds). Thus, the question is whether Congress has unequivocally provided that the obligations here in dispute are exempt from Federal transfer taxes.

The genesis of petitioner's claim that the value of the project notes is not includable in the gross estate resides in the United States Housing Act of 1937, ch. 896, 50 Stat. 888, also informally referred to as the Wagner Housing Act. Several courts have considered this question and the results are not uniform. The progenitor of the cases supporting petitioner's position is *Haffner v. United States*, 585 F. Supp. 354 (N.D. Ill. 1984), affd. per curiam 757 F.2d 920 (7th Cir. 1985), with Judge Posner dissenting. On the other hand, the court in *Shackelford v. United States*, 649 F. Supp. 1347 (E.D. Va. 1986), on appeal No. 87-2512 (4th Cir.), has followed Judge Posner's dissent in *Haffner*.[2] To understand these conflicting results, it is necessary to discuss in some detail the Housing Act, its legislative history and the amendments to that act.

## Housing Act of 1937 and Amendments

The purpose of the United States Housing Act of 1937 (hereinafter Act of 1937) was to assist the States and their political subdivisions "to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income." Sec. 1, Act of 1937. Section 3 of the act created a "body corporate" known as the United States Housing Authority

---

[2]We are aware that this issue is now before the Supreme Court. The case was submitted to us prior to the Supreme Court's noting probable jurisdiction.

*Haffner v. United States*, 585 F. Supp. 354 (N.D. Ill. 1984), affd. per curiam 757 F.2d 920 (7th Cir. 1985), has been followed in *Netsky v. United States*, 652 F. Supp. 783 (E.D. Pa. 1986), on appeal No. 86-1616 (3d Cir.); *Estate of Bradford v. United States*, 645 F. Supp. 476 (N.D. Cal. 1986), appeal pending No. 86-1722 (9th Cir.); *Rosenberg v. United States*, an unreported case (C.D. Cal. 1986, 86-2 USTC par. 13,703), probable jurisdiction noted May 18, 1987, sub nom. *Wells Fargo Bank v. United States* (S. Ct. No. 86-1521). In *Rosenberg*, the court followed *Haffner* and also held that secs. 641 and 642 of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 939, were unconstitutional. These provisions, in effect, overrule the *Haffner* result but only for decedents dying after June 19, 1984. Sec. 641(b)(3) of Pub. L. 98-369, *supra*, specifically provided that no inference shall arise from its provisions "that any transfer of property (or interest therein) before June 19, 1984, is exempt from Federal estate and gift taxes." See also Staff of J. Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 971-972. Since that case could be decided on an issue other than that before this Court, the parties have requested that we not hold our decision.

within the Department of Interior. The Authority was exempt from "all taxation now or hereafter imposed by the United States or by any State, county, municipality, or local taxing authority." Sec. 5(e). The Authority was authorized "to issue obligations, in the form of notes, bonds, or otherwise" (sec. 20(a)) that were "fully and unconditionally guaranteed upon their face by the United States (sec. 20(c)). Section 20(b) provided that:

Such obligations shall be exempt, both as to principal and interest, from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States or by any State, county, municipality, or local taxing authority. [50 Stat. 898.]

While the notes at issue here were not issued by the Authority, as we shall see, section 20(b) was deemed to be a factor in the resolution of the matter by the District Court in *Haffner*.

The Act of 1937 also recognized the existence of "public housing agenc[ies]" that were defined as "any State, county, municipality, or other governmental entity or public body (excluding the Authority), which is authorized to engage in the development or administration of low-rent housing or slum clearance." (Sec. 2(11)). Under the act, the Authority was authorized to make loans (sec. 9) and annual contributions (sec. 10) to public housing agencies. The Authority, however, was not authorized to engage directly in the construction of housing projects. Rather, it was envisioned that, in addition to the contributions and loans from the Authority to construct housing, the public housing agencies would raise additional funds and would be the actual developers of the project. Section 5(e) provided:

Obligations, including interest thereon, issued by public housing agencies in connection with low-rent-housing or slum-clearance projects, and the income derived by such agencies from such projects, shall be exempt from all taxation now and hereafter imposed by the United States. [50 Stat. 890.]

While the tax exemption for agency obligations contained in section 5(e) continued over the years (see, e.g., sec. 102(g), Housing Act of 1949, ch. 338, 63 Stat. 413, 416; sec. 201(a), Housing and Community Development Act of 1974, Pub. L. 93-383, 88 Stat. 633, 667), the tax exemption of the

Authority's obligations under section 20(b) of the Act of 1937 did not survive. In 1941, Congress revoked the tax exemption for interest on and gains or losses from obligations issued by the United States or agency or instrumentality of the United States issued after February 28, 1941. Sec. 4, Public Debt Act of 1941, ch. 7, 56 Stat. 7, 9. Thus, in section 304(h) of the Housing Act of 1949, Congress rewrote the entire Act of 1937, and, while the new section 11(b) continued the tax exemption of public housing agency obligations, that legislation contained nothing corresponding to section 20(b) of the Act of 1937.

*The Rationale of Haffner*

The District Court in *Haffner* held that the phrase "exempt from all taxation" contained in section 11(b) of the 1937 Act, as amended, included an exemption from Federal estate taxation. The court acknowledged, and petitioner does not otherwise maintain, that that phrase standing alone "does not necessarily operate as an exemption from estate or inheritance taxes." 585 F. Supp. at 356.

The court in *Haffner* first noted that the phrase in section 20(b) of the 1937 Act exempted obligations of the Authority (the Federal agency) "both as to principal and interest, from all taxation (except surtaxes, estate, inheritance, and gift taxes)" imposed by the United States or any State or local taxing authority. On the other hand, the court noted that under section 5(e) of that act "Obligations, including interest thereon, issued by public housing agencies, and income derived by such * * * [public housing] projects are to be exempt from all taxation." 585 F. Supp. at 359. The court, attempting to reconcile these differences, reasoned (585 F. Supp. at 360):

We have, in effect, the choice of ascribing the difference in the wording of sections 20(b) and 5(e) to simple inadvertence or to considered policy determination by Congress. Where there is a plausible basis for the difference which is consistent with the overall legislative scheme and expressed general intentions of Congress, we are bound to prefer the latter alternative. On the whole legislative record, including the striking difference in the wording of sections 5(e) and 20(b), Senator Walsh's statement, and the rejection of Secretary Ickes proposal * * * , the Congressional intent in 1937 is clear that public housing agency obligations are to be exempt from estate and inheritance taxation.

The court also concluded that this result was directed by *Jandorf's Estate v. Commissioner*, 171 F.2d 464 (2d Cir. 1948).

*The Difference Between Sections 5(e) and 20(b) of the 1937 Act*

We will discuss Senator Walsh's statement and Secretary Ickes' proposal, but at present we focus our attention on the language differences between sections 20(b) and 5(e). In our view, the court in *Haffner* failed to recognize that the two sections apply to two entirely different types of obligations that were subject, at that time, to different types of taxation.

The concept of public housing agency obligations is rooted in the municipal bond. See Tretter, "Public Housing Finance," 54 Harv. L. Rev. 1325, 1329-1335 (1941). With regard to obligations of this nature, it had been long established that the phrase "exempt from all taxation" did not include taxes on the transfer of the bonds. E.g., *Murdock v. Ward, supra; Greiner v. Lewellyn, supra.*[3] Thus, that phrase had been definitively interpreted by 1937.

The exemption for obligations issued by the Authority, however, faced other problems. From 1913 until 1954, the various revenue acts and the Internal Revenue Code of 1939 essentially imposed a two-tiered income tax—a normal tax on "net income" at generally a flat rate and an additional tax on "surtax net income." For example, under the Revenue Act of 1936, ch. 690, 49 Stat. 1648, the applicable taxing act when the 1937 Housing Act was enacted, a normal tax of 4 percent on "net income" was imposed by section 11, while section 12 imposed a graduated tax on "surtax net income." Furthermore, the computations of "net income" and "surtax net income" were different. Compare section 25(a) and (b). Net income was defined as "gross income" computed under section 22 less deductions allowed by section 23. Sec. 21.

---

[3]Respondent points out that under secs. 22(b)(4) and 116(d) of the Revenue Act of 1936, the income from obligations of States and political subdivisions thereof and income of States and political subdivisions were exempt from taxation; accordingly, it was arguable that this provision in sec. 5(e) was unnecessary. We agree with respondent, however, at that time it was unclear whether a "public housing agency" was a political subdivision of a State. See, e.g., *United States v. Certain Lands in City of Louisville*, 78 F.2d 684 (6th Cir. 1935). Thus, the safest route to follow would have been to include the exemption in the Act of 1937.

Under section 22(b)(4), "gross income" excluded, inter alia, obligations of the United States and of "corporation[s] organized under Act of Congress, * * * only if and to the extent provided in the respective Acts authorizing the issue thereof * * * and shall be excluded from gross income only if and to the extent it is wholly exempt from the taxes imposed by this title." If the interest on the obligations of the Authority were to be exempt at all, therefore, section 22(b)(4) of the 1936 Revenue Act required that the exemption be set out by section 20(b) of the 1937 Housing Act, and Congress provided that the obligations would be exempt from normal tax and not surtax. Thus, the parenthetical "except" clause in section 20(b) had legal significance other than that suggested by the *Haffner* opinion.

While this may explain the "surtax" exception, it does not explain the estate tax exception. Respondent suggests that the most logical answer is that it was due to an abundance of caution on the draftsmen's part. Unlike the phrase "exempt from all taxation" in section 5(e), the phraseology of section 20(b) had not been definitively interpreted. If section 20(b) were written "the obligations * * * from all taxation (except surtaxes)," certainly an argument could be made that the inclusion of surtaxes in the exception excluded from the exception estate and gift taxes. Accordingly, to avoid that possible result, the draftsmen included estate and gift taxes. We find respondent's explanation reasonable and persuasive. In sum, while we find the phraseology differences in section 5(e) and 20(b) significant, we do not agree with the conclusion drawn by the court in *Haffner* as to implications of those differences. That significance has no relation to whether the notes or bonds are exempt from estate and gift taxes.

## Other Indicia of Exemption

The court in *Haffner* also relied on certain remarks by Senator Walsh during the discussion of the 1937 Act on the floor of the Senate. During an extended discussion of the bill, Senator Walsh stated (81 Cong. Rec. 8085):

Obligations, including interest thereon, issued by public housing agencies * * * [are] to be exempt from all taxation now or hereafter imposed by the United States. * * *

This statement simply reflects in part the language of section 5(e). Senator Walsh, however, added the following comment (81 Cong. Rec. 8085):

In other words, the bill gives the public housing agencies the right to issue tax exempt bonds, which means they are free from income tax, surtax, estate, gift and inheritance taxes.

We initially bear in mind that the Supreme Court has admonished that the remarks of a single legislator, even if he was a sponsor of the legislation, "are not controlling in analyzing legislative history."[4] *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979). See also *Weinberger v. Rossi*, 456 U.S. 25, 34-35 (1982); *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 117-118 (1980). That is particularly true here where there are several troubling aspects to Senator Walsh's remark.

First, as noted above, the language used in section 5(e) had been continually interpreted judicially to mean something entirely different. In this regard, Senator Walsh apparently was addressing section 5(e) and did not rely on any perceived relationship between sections 5(e) and 20(b) for his statement. As Judge Posner noted (757 F.2d at 922), it is highly unlikely that, given the long-established judicial interpretation of the language in section 5(e), if Congress had intended such a radical departure from that result, there would not have been discussion of the point in the committee reports. Neither petitioner nor the Court has found any such discussion. See S. Rept. 2160, 74th Cong., 2d Sess. (1936); S. Rept. 933, 75th Cong., 1st Sess. (1937); H. Rept. 1545, 75th Cong., 1st Sess. (1937); H. Conf. Rept. 1634 , 75th Cong., 1st Sess. (1937).

That fact is particularly troubling because Senator Walsh's statement flies in the face not only of established judicial interpretation but of the congressional zeitgeist. At least from the late 1920's, a concern developed over large concentrations of wealth that were controlled by relatively few families. This concern is reflected in the President's

[4]Senator Walsh's role in the legislative process is ambiguous. While he purported to speak for the Committee on Education and Labor, he was not the chairman and was not the floor manager of the bill. Furthermore, some of his comments appear to have been hostile to parts of the proposed bill as voted out of the committee.

message to Congress of June 19, 1935 (reprinted in H. Rept. 1681, 74th Cong., 1st Sess., 1939-1 C.B. (Part 2) 643):

Creative enterprise is not stimulated by vast inheritances. * * *

\* \* \* \* \* \* \*

A tax upon inherited economic power is a tax upon static wealth, not upon that dynamic wealth which makes for the healthy diffusion of economic good.

Although there were prior taxes on transfers at death, the estate tax provisions during this period had their roots in section 200 et seq., of the Revenue Act of 1916, ch. 463, 39 Stat. 756, 777. A gift tax made a brief appearance in the Revenue Act of 1924, but was repealed.[5] The gift tax, however, reemerged in section 501 et seq., Revenue Act of 1932, ch. 209, 47 Stat. 169, 245, as "an adjunct of the estate tax." H. Rept. 708, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 457, 477. The rates of the estate and gift taxes dramatically increased during the next decade.

By 1941, when housing construction under the 1937 Act reached significant levels, short and long term obligations covered by section 5(e) totaled more than $823 million and that amount was expected to increase substantially. 1941 Annual Report of the United States Housing Authority 29-31. During the same period, the value of the taxable estates was $1.575 billion and value of net gifts was $226 million. W. Warren & S. Surrey, Federal Estate and Gift Taxation 12-13 (1961 ed.). While a comparison of these figures suggests the enormous impact that an exemption under section 5(e) would have had on the estate and gift taxes, they do not tell the whole story. The notes and bonds could have been recycled after each death or gift, and both taxes virtually eliminated as a practical matter. We find it highly unlikely that Congress effectively would remove enormous wealth from the reach of the estate and gift tax at the time that the nation was adopting a tax philosophy that was directly contrary to that result.

In sum, we disagree with the reliance in *Haffner* on Senator Walsh's statement. We agree with Judge Posner's dissenting opinion (757 F.2d at 922): "The phrasing of

[5]Sec. 319, Revenue Act of 1924, ch. 234, 43 Stat. 253, 313, repealed by sec. 234, Revenue Act of 1926, ch. 27, 44 Stat. 9, 86.

Senator Walsh's statement ('which means') suggests that he misunderstood the well-settled meaning of 'tax-exempt bonds.' "

The *Haffner* court also sought to draw support for its conclusion from the fact that during the hearings on the Wagner bill, Secretary Ickes had submitted and supported a version differing "in many substantive respects from the Wagner bill," but containing a section 5(e) that was explicit in excepting estate taxes from the provision for exemption of housing agency obligations from Federal taxation. 585 F. Supp. at 358, 360. We agree with respondent that, since there were many differences in the two bills, the Committee's rejection of the Ickes bill gives rise to no inference that the variant draftsmanship of section 5(e) entered into the committee's decision. Furthermore, at the committee hearings, Secretary Ickes submitted a statement discussing the differences between his bill and S. 1685, and E.H. Foley, Jr., General Counsel of the Public Works Administration under Secretary Ickes, submitted a statement on behalf of Secretary Ickes, specifically addressing the differences between S. 1685 and S. 4424 (the 1936 version of the 1937 Act) regarding tax exemptions. Neither mentioned any difference between the Ickes version and the Wagner version of section 5(e). Hearings Before the Comm. on Education and Labor, 75th Cong., 1st Sess. 49-55 and 74 (Apr. 14, 15, and May 11, 1937).

*Jandorf's Estate*

In deciding *Haffner*, the District Court relied, in part, on *Jandorf's Estate v. Commissioner*, 171 F.2d 464 (2d Cir. 1948), revg. 9 T.C. 338 (1947). However, for the reasons noted by Judge Posner in his dissent (757 F.2d at 922), the facts of *Jandorf's Estate* are easily distinguishable from the facts of both *Haffner* and this case.

In *Jandorf's Estate*, the issue was whether U.S. bonds owned by a nonresident alien at the time of his death were exempt from the Federal estate tax by virtue of section 4 of the Victory Liberty Loan Act of March 3, 1919, ch. 100, 40 Stat. 1309, 1311. That section provided, in pertinent part, that "indebtedness of the United States * * * shall, while beneficially owned by a nonresident alien individual * * * not engaged in business in the United States, *be exempt*

both as to principal and interest from any and all taxation now or hereafter imposed by the United States." (Emphasis added.) However, section 1 of the act, which added a new section to the Second Liberty Bond Act of September 24, 1917, ch. 56, 40 Stat. 288, provided, in pertinent part, that "the notes herein authorized" may be issued *"Exempt, both as to principal and interest, from all taxation (except estate or inheritance taxes)."* 40 Stat. 1310 (emphasis added). In concluding that section 4 of the Victory Liberty Loan Act exempted foreign-held bonds from estate and inheritance taxes, the Second Circuit cited legislative history that conclusively established that Congress intended that result, and it emphasized that "the Treasury Department had * * * for 20 years construed the statute as granting exemption with respect to the estate tax." 171 F.2d at 466 n. 1, 467.

In this case and *Haffner*, however, unlike *Jandorf's Estate*, the legislative history does not clearly establish that Congress intended the 1937 Act to exempt the bonds in question from the Federal estate tax, and, we note, the Treasury Department has never construed the 1937 Act as doing so. Consequently, we find *Jandorf's Estate* inapposite to the facts of this case, and also inapposite to the facts of *Haffner*.

In sum, the court in *Haffner* agreed that the result it reached cannot stand on the language of section 5(e). Nonetheless, that court, in effect, reasoned that the exemption was implied by the difference in the language of sections 5(e) and 20(b), Senator Walsh's statement and Secretary Ickes' proposal. This, of course, does not follow the primary principle that tax exemption cannot be inferred. See *United States v. Stewart, supra.* Thus, we must respectfully decline to follow *Haffner.* Accordingly, petitioner's claim that these bonds are exempt from the purview of sections 2031 and 2033 must fail, and we conclude that the value of the project notes in dispute are includable in the gross estate.

*An appropriate order and decision will be entered.*

Reviewed by the Court.

CHABOT, NIMS, PARKER, WHITAKER, SHIELDS, HAMBLEN, COHEN, CLAPP, GERBER, and WELLS, *JJ.*, agree with the majority opinion.

---

WRIGHT, *J.* dissenting: I respectfully dissent from the majority's holding that so-called project notes issued under the United States Housing Act of 1937 (the Act of 1937), as amended, are includable in a decedent's gross estate for Federal estate tax purposes. In so holding, this Court has determined that neither the language of the Act of 1937 nor its legislative history supports the conclusion that Congress intended public housing agency project notes to be exempt from all taxation, including Federal estate tax. I believe the reasoning set forth in *Haffner v. United States*, 585 F. Supp. 354 (N.D. Ill. 1984), affd. per curiam 757 F.2d 920 (7th Cir. 1985), and followed by a majority of other courts, is sound and represents the correct interpretation as to the taxability of such notes. Accordingly, I would hold that such notes should not be included in the decedent's gross estate for Federal estate tax purposes.

I disagree with the majority's analysis of the statutory construction respecting the Act of 1937. Although the majority acknowledges that the phraseology differences between sections 20(b) and 5(e) are significant, they do not agree with the *Haffner* court's analysis as to those differences. (See p. 733.) Instead, the majority has determined that section 20(b) of the Act of 1937 was drafted differently from section 5(e) because unlike the phrase "exempt from all taxation" in section 5(e),[1] the phraseology of section 20(b) had not been definitively interpreted. Thus, the majority concludes that for purposes of clarity it was necessary for section 20(b) to add "estate tax" to the parenthetical expression and that no purpose can be ascribed to Congress in drafting section 5(e) without the parenthetical.

---

[1]The majority notes, however, that although income from obligations of States and political divisions was exempt from taxation under the Revenue Act of 1936, the provision in sec. 5(e) was arguably included because at that time it was unclear whether a public housing agency was a political subdivision of a State. (p. 732, note 3).

The majority's analysis, however, defies the logic of legislative drafting. It is difficult to comprehend why Congress would have seen fit to draft two sections of the same statute differently, if it intended each section to accomplish the same result as to the application of estate and gift tax. Instead, it is entirely possible that Congress intended that the public housing notes issued under section 5(e) carry with them an added incentive for investors to buy them. By exempting such notes from Federal estate taxes, Congress effectively lowered their overall cost (or increased the return on investment), thus making them an attractive investment for citizens in the post-Depression era, as well as a vehicle to spur local participation in the national housing endeavor.[2]

The majority's approach would be more acceptable to me if we did not have the comments of Senator Walsh who played an important role in the passage of this legislation.[3] The majority chooses not to attach much significance to Senator Walsh's comments concerning the section 5(e) exemption. In making his comments, Senator Walsh noted that he was "discussing every financial feature" of the bill. 81 Cong. Rec. 8085 (1937). He also purported to "put in the Record the viewpoint of the Committee" that considered the bill. It appears rather incongruous that members of the Senate, who made frequent comments during the lengthy discussion of the bill prior to its passage, would have let a "misstatement" stand on the record without making any

---

[2]One of the reasons for the legislation was to reduce unemployment and to stimulate business activity. See 81 Cong. Rec. 8076 (1937). Congress realized that there was an acute shortage of affordable housing and wanted to put such housing within the reach of lower income families. Although recognizing that local authorities had the powers to alleviate undesirable living conditions, Congress believed that they had not been exercised "partly because many of the owners of these slums are wealthy property owners who pay taxes to the city and have the power to prevent the tenement authorities or other authorities, such as those concerned with health, actually condemning their properties." See 81 Cong. Rec. 8077 (1937) (remarks of Senator Walsh).

[3]See Senator Walsh's introductory remarks at 81 Cong. Rec. 8076 (1937):

"Mr. President, I was Chairman of the Committee on Education and Labor last year when extensive hearings were held on a bill similar in character to the one now pending. This year, because of the unfortunate illness of the Senator from Alabama (Mr. Black) it fell to my lot to preside over the hearings on the pending bill which were also of several days duration. I rise now not merely for the purpose of seeking to influence the Members of the Senate in favor of this proposed legislation but rather to perform what I think is a very important duty for a member of an important Committee dealing with a important bill, namely, to put in the Record the viewpoint of the Committee and the viewpoint of at least some members of the Senate with respect to certain features of the authority and power granted by the bill."

reference to it or undertaking any effort towards correcting it if it were indeed wrong. Therefore, in my view, given his position, Senator Walsh's statement stands in the absence of a committee report as the uncontradicted legislative history as to congressional intent with respect to the taxability of public housing agency project notes.

Finally, the majority attempts to distinguish the facts of this case from the facts of *Jandorf's Estate v. Commissioner*, 171 F.2d 464 (2d Cir. 1948), revg. 9 T.C. 338 (1947). (Pp. 736-737). The majority opinion asserts that the legislative history surrounding the statute in issue in *Jandorf's Estate*, as well as the Treasury Department's long-standing position, conclusively established that foreign-held bonds were exempt from estate tax. The majority states that such is not the case with respect to obligations authorized to be issued under the Act of 1937. In my opinion, the majority's conclusion that *Jandorf's Estate* is inapposite to the case at bar is erroneous.

In *Jandorf's Estate*, a case involving the interpretation of a similarly worded and constructed statute as that now before us, the Second Circuit stated:

The use of the same words of exemption in different sections of the same statute with an expressly declared exception in one case and not in the other, is a strong indication that the Congress thought the exception necessary in order to exclude estate and inheritance taxes from the broad words of the exemption provision. [171 F.2d at 466.]

The Court of Appeals then referred to the legislative history as supporting that interpretation of congressional intent.

The Second Circuit, in addressing respondent's arguments that the language "exempt from any and all taxation" does not include Federal estate tax, acknowledged that cases such as *Murdock v. Ward*, 178 U.S. 139 (1900), support the "proposition that a provision exempting United States bonds from taxation as to principal and interest, *without more*, relates exclusively to direct taxation of them as property." 171 F.2d at 467 (emphasis in original). In further distinguishing the facts in *Jandorf's Estate* from those cases relied on by respondent, the court of appeals emphasized: "The cited cases would be persuasive, if Congress had not shown an intent to use the phrase 'exempt * * * from all taxation' *to include estate taxes by expressly excepting*

*them in one section of the statute and not in the other."* *Jandorf's Estate v. Commissioner, supra* at 467 (emphasis supplied). And, in its conclusion, the Second Circuit wrote, "For reasons already stated we believe that the statute discloses the intent of Congress to grant exemption from the Federal estate tax." 171 F.2d at 467.

Thus, the Court of Appeals found the wording of the statute itself to be evidence of congressional intent. Such language was further bolstered by the legislative history as well as the long-standing position of the Treasury Department. Similarly, I find that the statutory language of the Act of 1937, as well as the uncontradicted statement of Senator Walsh, contains sufficient indicia of a congressional intent to exempt public housing agency project notes from estate taxes so as to preclude application of the long established general rule concerning the phrase "exempt from all taxation."[4]

Thus, for the reasons noted above, as well as those enunciated in the *Haffner* decision, I would construe the phrase "exempt from all taxation" contained in section 5(e) of the Act of 1937 as encompassing exemption from Federal estate tax.

KÖRNER, JACOBS, PARR, and WILLIAMS, *JJ.*, agree with this dissent.

---

[4] See sec. 20.2033-1, Estate Tax Regs., embodying this rule which provides in pertinent part:

"Various statutory provisions which exempt bonds, notes, bills, and certificates of indebtedness of the Federal Government or its agencies and the interest thereon from taxation are generally not applicable to the estate tax, since such tax is an excise tax on the transfer of property at death and is not a tax on the property transferred."

However, the obligations at issue herein are ones which are issued by State and local authorities and not the Federal Government.