**Charles C. HAFFNER III and the Northern Trust Company, as Executors of the Will of Charles C. Haffner, Jr., deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 83 C 4669.**

United States District Court,
N.D. Illinois, E.D.

April 25, 1984.

Middleton Miller, Larry D. Berning, James J. Carroll, Sidley & Austin, Chicago, Ill., for plaintiffs.

Edward J. Moran, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., Terry K. Ray, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This is an action against the government filed by the executors of the will of Charles C. Haffner, Jr. (the executors) asserting a claim for refund of $614,905.69 in estate tax, plus costs and interest. Our jurisdiction is predicated on 28 U.S.C. § 1346(a)(1). The parties have filed cross motions for summary judgment based on the undisputed facts in the record before us. For the reasons hereinafter stated, the executors' motion is granted and the government's motion is denied.

Charles C. Haffner, Jr. (decedent), a resident of Lake Forest, Illinois, died on February 13, 1979 leaving a will that the Circuit Court of Lake County, Illinois admitted to probate on March 15, 1979. The plaintiffs were named in the will and duly appointed as executors of the decedent's estate by the Lake County Circuit Court.

The executors, on November 13, 1979, filed the United States Estate Tax Return (the Return) for the decedent's estate with the District Director of Internal Revenue at Chicago, Illinois (the District Director), and paid the tax showed due thereon in the amount of $9,071,713.30. Schedule B, appended to the Return, disclosed the following public housing agency Project Notes, which are the subject matter of this litigation:

$85,000 par value Anne Arundel Co., Md., dated 4/11/78, 3.79% project note due 4/13/79

$1,000,000 par value Oklahoma City, Oklahoma, dated 5/9/78, 4.12% project note due 5/11/79

Although listing the Project Notes on Schedule B, the executors stated that they were not taxable, relying on section 11(b)

of the Housing Act of 1937, 42 U.S.C. § 1437i(b) ("section 11(b)"),[1] pursuant to which the Project Notes had been issued.

The District Director disagreed, taking the position, upon audit of the Return, that the $1,085,000 par value Project Notes were includible in the decedent's gross estate at a value, including interest, of $1,113,901.42. That adjustment and one other made by the District Director resulted in the assessment of an additional estate tax of $630,808.76. The executors have paid that additional assessment.

After receiving a National Office Technical Advice Memorandum elucidating the IRS's position that the Project Notes were subject to estate taxation, the executors, on November 10, 1982, filed with the District Director a claim for refund of the $614,-905.69 of tax plus interest that was allocable to the Project Notes. That claim was denied on June 10, 1983 and this suit for refund was timely filed thereafter.

■ The question presented by these cross motions for summary judgment is one solely of law. Section 11(b) provides that obligations like the Project Notes owned by the decedent and the interest on them "shall be exempt from all taxation now or hereafter imposed by the United States whether paid by such agencies or by the United States." A March 1977 circular of the Department of Housing and Urban Development, titled "Short Term Tax-Exempt Project Notes," explained that "[section 11(b)] provide[s] that the Notes *including interest thereon ... shall be exempt from all taxation now or hereafter imposed by the United States.*" (Emphasis original.) Although the provision in question has been the applicable law since 1937, we are required to decide what is apparently an issue of first impression: whether the

section 11(b) exemption includes federal estate taxes.

The estate tax is not a direct tax "on" the Project Notes themselves. Rather, it is an excise or duty, imposed with reference to the value of the notes, on their passage to the decedent's legatees. This principle, which has been developed in the context of the Constitutional apportionment decisions, is firmly entrenched. *See e.g., Plummer v. Coler,* 178 U.S. 115, 130, 20 S.Ct. 829, 835, 44 L.Ed. 998 (1900); *Greiner v. Lewellyn,* 258 U.S. 384, 387, 42 S.Ct. 324, 324, 66 L.Ed. 676 (1922); *United States v. United States Manufacturers National Bank,* 363 U.S. 194, 198, 80 S.Ct. 1103, 1106, 4 L.Ed.2d 1158 (1960). Though the distinction bears a somewhat formalistic stamp, Justice Holmes has commented that it is supported by "a page of history ... worth a volume of logic." *New York Trust Co. v. Eisner,* 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963 (1921). And the executors disavow any intention to travel the "primrose path" that would be indicated by a challenge to the notion that the estate tax is not a direct tax.

As a kind of corollary to this indirect nature of the estate tax, it has long been established that an exemption of securities or bonds from "taxation" or "all taxation" —despite the apparent literal force of the language—does *not* necessarily operate as an exemption from estate or inheritance taxes. *See e.g., Murdock v. Ward,* 178 U.S. 139, 145–147, 20 S.Ct. 775, 777–78, 44 L.Ed. 1009 (1900); *United States Trust Co. v. Helvering,* 307 U.S. 57, 60, 59 S.Ct. 692, 693, 83 L.Ed. 1104 (1939); *Iglehart v. Commissioner,* 77 F.2d 704, 712 (5th Cir.1935); *Greene v. United States,* 171 F.Supp. 459, 145 Ct.Cl. 259 (1959).[2] The executors do not seek to controvert the established general rule, now embodied in Treas.Reg. § 20.-

---

**1.** Section 11(b) provides in pertinent part:

[O]bligations, including interest thereon, issued by public housing agencies in connection with low-income housing projects shall be exempt from all taxation now or hereafter imposed by the United States whether paid by such agencies or by the Secretary.

**2.** The general proposition is also stated in two cases that address gift taxability of certain United States Treasury bills. *See Hamersley v. United States,* 16 F.Supp. 768 (Ct.Cl.1936), *cert. denied,* 300 U.S. 659, 57 S.Ct. 435, 81 L.Ed. 868 (1937); *Phipps v. Commissioner,* 91 F.2d 627 (10th Cir.), *cert. denied,* 302 U.S. 742, 58 S.Ct. 144, 82 L.Ed. 574 (1937).

2033–1 (1963),[3] that an exemption from all taxation without exception generally does not affect the imposition of estate and other excise taxes.

The executors' argument is bottomed on the premise, recognized in *Greene v. United States, supra,* and followed in *Jandorf's Estate v. Commissioner,* 171 F.2d 464 (2d Cir.1948), that where there is a "strong indication" in a particular statute and its legislative history that Congress intended an exemption from "all taxation" to encompass excise taxes as well, the specific Congressional intention should override the general rule of *Murdock v. Ward, supra; United States Trust Co., supra,* and similar cases. The executors argue that the terms and legislative history of the Housing Act of 1937, Pub.L. No. 75–412, 50 Stat. 888 (1937) ("the 1937 Act"), from which section 11(b) is derived, contain sufficient indicia of a Congressional intent to exempt Project Notes from estate taxes so as to preclude application of the *Murdock v. Ward* and *United States Trust Co.* rule.

The 1937 Act created the former United States Housing Authority (the Authority) as an agency of the Department of the Interior. Section 3(a). It acknowledged the existence of "public housing agencies" defined as "any State, county, municipality, or other government entity or public body (excluding the Authority), which is authorized to engage in the development or administration of low-rent housing or slum clearance." Section 2(11).

Section 1 of the 1937 Act stated that the purpose of the legislation was to make available funds and credit to assist State and local governments in the provision of low income housing and the eradication of "slum" areas. To accomplish the objective, the Authority was authorized, within limits and under certain conditions, to provide loans to local public housing agencies "to assist the development, acquisition or administration of low-rent-housing or slum clearance projects by such agencies." Section 9. The Authority also had the power to make "annual contributions" to such agencies for the same purposes, section 10, and, as an alternative funding mechanism, to provide "capital grants" to the agencies in connection with the acquisition or development of housing projects or "slum clearance" programs, section 11. The primary importance of local participation in the national housing endeavor was recognized in section 12 of the 1937 Act, which directed the Authority to seek to transfer ownership and management responsibility for low income housing projects to the local agencies.

Section 5(e) of the 1937 Act described the tax treatment of obligations of "public housing agencies", of which the decedent's Project Notes are an example:

> Obligations, including interest thereon issued by public housing agencies in connection with low-rent housing or slum-clearance projects, and the income derived from such projects, *shall be exempt from all taxation* now or hereafter imposed.

(Emphasis supplied.)

Section 20(a) of the 1937 Act authorized the Authority to issue obligations and section 20(b) described the tax treatment of those obligations:

> Such obligations, *shall be exempt,* both as to principal and interest, *from all taxation (except surtaxes, estate, inheritance, and gift taxes)* now or hereafter imposed by the United States or by any State, county, municipality, or local taxing authority.

(Emphasis supplied.) The emphasized divergence in the wording of sections 5(e) and 20(b) of the 1937 Act is reflected in the section by section summary of the Wagner Housing Bill, S.B. 1685,[4] that was prepared

---

**3.** Treas.Reg. § 20.2033–1 provides in pertinent part:

> Various statutory provisions which exempt bonds, notes, bills, and certificates of indebtedness of the Federal Government or its agencies and the interest thereon from taxation are generally not applicable to the estate tax, since such tax is an excise tax on the transfer of property at death and is not a tax on the property transferred.

**4.** S.B. 1685 was enacted as the 1937 Act with minor, and not material, modifications.

by the Senate Committee on Education and Labor. *See* 81 Cong.Rec. 8086–8088 (1937).

During the 1937 hearings on the Wagner Housing Bill, then Secretary of Interior Harold L. Ickes proposed an alternate bill. The Ickes bill, which the Senate Committee on Education and Labor rejected, differed in many substantive respects from the Wagner bill, as to some of which Secretary Ickes gave testimony before the Senate Committee. The Ickes bill contained a section 20(b) identical to that in the 1937 Act. Ickes' section 5(e), however,—unlike the 1937 Act—contained the same excepting language as that in section 20(b). Ickes offered no testimony to explain this relatively minor aspect of his proposed changes to the Wagner bill.

■ The executors' argument is that Congress' inclusion in the 1937 Act of an exception for estate and other taxes in the exemption from taxation for Authority obligations, section 20(b), with no corresponding exception in the exemption for public housing agency obligations, section 5(e), indicates an intention that the latter obligations be exempt from the forms of taxation listed in the exception clause for the former. First, Congress ordinarily is presumed not to have used language idly: statutes are to be construed so as to give operative effect to every clause. *See e.g. Adler v. Northern Hotel Co.*, 175 F.2d 619, 621 (7th Cir.1949) (*citing Market Co. v. Hoffman*, 101 U.S. 112, 115–16, 25 L.Ed. 782 (1879)); *American National Bank Co. v. Dallas County*, —— U.S. ——, 103 S.Ct. 3369, 3375, 77 L.Ed.2d 1072 (1983). Second, all the sections of a single statute should be presumed to have been drafted with reference one to another; the whole statute is the context for construction of any of its individual sections. *See e.g. United States v. American Trucking Associations*, 310 U.S. 534, 542–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).

Thus, the executors contend that the estate tax exception in the section 20(b) exemption must have operative effect to avoid violation of the first-stated rule of statutory construction. Congress, it is argued, felt it necessary to retract, by the exception clause, the exemption from estate taxation which—Congress must have believed—it had granted in the preceding exemption from "all taxation." Section 5(e) contains no such retraction. Therefore, the argument continues, applying the second rule of statutory construction, Congress must have wanted the section 5(e) exemption to cover estate taxes, else it would have included a corresponding exception in that exemption. That it did not, demonstrates an intention to exempt Project Notes from estate taxation. As further evidence of this intention, the executors point to Congress' rejection of Secretary Ickes' version of section 5(e).

■ We approach the issue before us mindful that our task is not merely a mechanical one. As has repeatedly been recognized, the rules of statutory construction are not ends in themselves. They serve rather as a means to get at the intention of Congress. If *Jandorf, supra*, and *Greene, supra*, stand for anything, it is that a Congressional desire to override *Murdock* and *United States Trust Co.* should be clear and unambiguous in order to have effect. The *Murdock* and *United States Trust Co.* rule is hardly absurd or implausible in some *a priori* fashion, and there is no reason why, either in general or with particular reference to section 11(b), we should strive to avoid it. The question is simply whether, giving heed to the canons of statutory construction, we can conclude that Congress wished *Murdock* not to apply to public housing agency obligations.

■ It is fundamental to the Constitutional separation of powers principle that Congress be presumed to have drafted legislation conscious of the effect of its language. When, in the 1937 Act, Congress wished to exclude estate and other excise taxes from the ambit of a taxation exemption, it did so in unambiguous terms. Section 20(b). That Congress did not provide for any exception in the section 5(e) exemption—when it plainly knew how to do so—is powerful evidence that it wished that exemption broadly and literally to cover "all"

forms of federal taxation. In fact, this is precisely what Senator Walsh, a sponsor of the 1937 Act,[5] declared that the section 5(e) exemption was intended to accomplish:

> *Obligations,* including interest thereon, *issued by public housing agencies,* and income derived by such agencies on such projects *are to be exempt from all taxation now or hereafter imposed by the United States. In other words, the bill gives the public housing agencies the right to issue tax-exempt bonds, which means they are free from income tax, surtax, estate, gift and inheritance taxes.*

81 Cong.Rec. 8085 (1937) (emphasis added).

Senator Walsh was "discussing every financial feature" of the proposed legislation. *Ibid.* Indeed, his statement with respect to public housing agency obligations may fairly be read as containing an ellipitical reference to the section 20(b) exception of "surtaxes, estate, inheritance, and gift taxes."

The government argues that Senator Walsh's statement, in light of *Murdock,* should be dismissed as an uninformed or inaccurate commentary on the scope of the section 5(e) exemption. We have weighed the possibility that Senator Walsh, as the government would have it, "misspoke." We. doubt that Senator Walsh let slip a description of section 5(e) that he did not intend; his words are straightforward, unambiguous and emphatic. Whether Senator Walsh or any other member of the 75th Congress knew of *Murdock* or felt compelled explicitly to reject its applicability to local public housing agency obligations is not directly relevant to the meaning of section 5(e). *Murdock* simply states a principle of statutory construction to be applied *in the absence* of a contrary Congressional intent. *Murdock* is not, as the government

would have it, "overruled" by Congress' expression of such an intention. The question before us is simply whether there is a "strong indication" in the statute and its legislative history that Congress intended the 5(e) exemption to apply to the federal estate tax. *See Jandorf's Estate v. Commissioner, supra.* In light of the striking and otherwise unexplained difference in the wording of the section 20(b) and section 5(e) exemption provisions and in light of the unambiguous and unquestioned declaration of Senator Walsh, it is virtually beyond argument that such a "strong indication" is present in the 1937 Act.

The *Jandorf* case is practically on all fours with this one. At issue there was the tax treatment of Victory Liberty bonds held by a foreign investor, obligations that were authorized by the Victory Liberty Loan Act of March 3, 1919, Pub.L. 65–328, 40 Stat. 1309 (1919). Section 1 of the Victory Liberty Loan Act describes the tax treatment accorded bonds sold to United States investors and section 4 amends a prior act which describes that of bonds sold to foreign investors and purchased with foreign money. The wording of sections 1 and 4 of the Victory Liberty Loan Act is materially identical to that of sections 20(b) and 5(e), respectively, of the 1937 Act.

The Second Circuit, in *Jandorf,* inferred that the purpose of section 4 was to exempt foreign-held bonds from estate and inheritance taxes. The *Jandorf* court had before it the considered statement of the then chairman of the Senate Finance Committee, similar to the Walsh statement, that that was the result intended by the overall statutory scheme. *See* 171 F.2d at 466 n. 1. Congress, in connection with passage of the Victory Liberty Loan Act, considered and rejected an amendment proposed by Congressman Parker which, like the Ickes

---

5. Senator Walsh was more than a nominal sponsor of the bill. His statement reflects considerable knowledge of the detailed financial and other provisions of the legislation. Moreover, Senator Wagner, who "drafted the bill, ... introduced it, and ... has been deeply interested in the subject," 81 Cong.Rec. 8080, was present during Senator Walsh's presentation and commented frequently, correcting Senator Walsh on occasion, *see* 81 Cong.Rec. 8081. Significantly, Senator Wagner did not dispute Senator Walsh's characterization of Section 5(e). We find Senator Walsh's statement an authoritative expression of the Congressional intent. *See* 2A C. Sands, Sutherland Statutory Construction § 48.15 (4th ed. 1973).

bill with respect to public housing agency obligations, would have made foreign-held bonds subject to the same tax treatment as bonds held by United States citizens. The court concluded:

> The use of the same words of exemption in different sections of the same statute with an expressly declared exception in one case and not in the other, is a strong indication that the Congress thought the exception necessary in order to exclude estate and inheritance taxes from the broad words of the exemption provisions.

171 F.2d at 466.[6]

The government's attempts to distinguish *Jandorf* are not persuasive. The government first points to the fact that the Treasury Department had had a longstanding policy of exempting foreign-held Victory Liberty bonds from estate taxation. The *Jandorf* court did take note of this fact. 171 F.2d at 467. But the issue before the court was *Congress'* intention with respect to taxation of the bonds and it is therefore clear that the Treasury Department's prior position was not an essential element in the court's ultimate conclusion. That the Treasury Department performed no similar reversal with respect to public housing agency obligations is not a material distinction of this case from *Jandorf.*

The government also observes that the legislative history of the 1937 Act contains no direct explanation of why local obligations should have more favorable tax treatment than their federal counterparts. Unlike the Parker proposed amendment of the Victory Liberty Loan Act, there is no explanation of the reason for rejection of the Ickes amendment of section 5(e) of the 1937 Act.

The executors offer the speculation that more advantageous tax treatment for state and local obligations than was available for Authority obligations was intended to advance a policy of decentralized financing of low-income housing. It is certainly clear that Congress wished the States and local

government entities to assume a substantial share of these housing costs, *see e.g.* 81 Cong.Rec. 8083 (1937), as well as primary responsibility for the program of slum clearance and low cost housing development which the 1937 Act envisaged, *see e.g.* section 12 of the 1937 Act. Although the importance of the decentralization policy in general is apparent on the face of the statute and in its legislative history, there is nothing in the legislative history to support the proposition that Congress considered differing tax treatment for local and federal obligations in particular, as a way to achieve that policy. It is also possible that Congress felt complete tax exemption was necessary to enable local housing agencies to sell their bonds at the lowest possible price but not necessary for Authority bonds.

We recognize that *Jandorf* presented a more clearly documented case of a deliberate Congressional decision to accord differing tax treatment to United States and foreign-held bonds. While that may be true, it is not a sufficient basis for distinguishing *Jandorf.* We have, in effect, the choice of ascribing the difference in the wording of sections 20(b) and 5(e) to simple inadvertence or to considered policy determination by Congress. Where there is a plausible basis for the difference which is consistent with the overall legislative scheme and expressed general intentions of Congress, we are bound to prefer the latter alternative. On the whole legislative record, including the striking difference in the wording of sections 5(e) and 20(b), Senator Walsh's statement, and the rejection of Secretary Ickes proposal to make the wording of section 5(e) the same as section 20(b), the Congressional intent in 1937 is clear that public housing agency obligations are to be exempt from estate and inheritance taxation.

*United States Trust Co., Murdock* and Treas.Reg. 20.2033–1 state a "general" principle that is *not* applicable in the face

---

6. *Jandorf* has been followed by the Third Circuit and the Tax Court. *See Pennsylvania Co. for Banking & Trusts v. United States,* 185 F.2d 125 (3d Cir.1950); *Lowenstein v. Commissioner,* 17 T.C. 60 (1951).

of clear evidence of a contrary Congressional intent in a particular instance. Whatever the force of an exemption from "all taxation" in general and without more, we conclude that section 5(e) of the 1937 Act was intended to provide an estate tax exemption.

Since 1937, the provisions for federal assistance to local, low-income housing projects have undergone substantial revision, primarily in 1949 and 1974. *See* The Housing Act of 1949, Pub.L. 81–171, 63 Stat. 413 (1949); The Housing and Community Development Act of 1974, Pub.L. 93–383, 88 Stat. 653 (1974). The broad contours of the current legislation, which governs the Project Notes in issue here, are parallel to the federal subsidy program established in the 1937 Act. The declaration of policy in 42 U.S.C. § 1437 contains the same general goals as are expressed in section 1 of the 1937 Act. Like the 1937 Act, the current legislation provides for federal loans to state and local public housing agencies, 42 U.S.C. § 1437b, and for federal assistance in the form of annual contributions, 42 U.S.C. § 1437C. The current statute contains far more detailed provisions with respect to the terms of loan and annual contribution contracts, *see* 42 U.S.C. § 1437d, as well as provision for direct participation of low income individuals themselves, through local public housing agencies, in the federal assistance, *see* 42 U.S.C. § 1437f, and special provisions for elderly and other special beneficiaries, *see* 42 U.S.C. § 1437e. Nonetheless, the vision and the broad design of the 1937 legislation remain in force today in what is still known as the "United States Housing Act of 1937." *See* Section 201 of the Housing and Community Development Act of 1974, Pub.L. 93–383, 88 Stat. 653 (1974).

In 1949, Congress rewrote section 20 of the 1937 Act deleting any reference to the tax treatment of Authority obligations. *See* Section 304 of The Housing Act of 1949, Pub.L. 81–171, 63 Stat. 413, 427 (1949). Section 102(g) of the 1949 legislation, 63 Stat. 416, continued the provision for tax treatment of public housing agency obligations that was provided for under section 5(e) of the 1937 Act. The legislative history of the 1949 legislation implies that Congress did not then consider and did not intend to amend in any fashion the tax treatment accorded local obligations. *See* Sen.Rep. No. 81–84, 81st Cong.2d Sess., *reprinted in*, 1949 U.S.Code Cong. & Ad. News 1550, 1577.

The 1974 legislation continued the tax exempt status of local public housing agency obligations. Revisions were made in the bond financing provisions of the housing legislation with the aim of making public housing agency obligations "more acceptable to private investors." *See* Sen.Rep. No. 93–693, 93d Cong.2d Sess., *reprinted in*, 1974 U.S.Code Cong. & Ad.News 4273, 4313. Section 11(b) of the United States Housing Act of 1937 now provides that the tax exempt status of public housing agency obligations applies whether the interest on them is paid by the Secretary of Housing and Urban Development or by the local agencies themselves. Section 11(b) also recognizes that such agencies may issue non-tax exempt obligations. There is no indication in the 1974 legislation or its legislative history that Congress intended in any other respect to modify the tax treatment for public housing agency obligations. And Congress has not since amended the tax exemption provision.

It is apparent, therefore, as the government appears to concede in its brief, that the 1937 legislative intent with respect to estate taxation of local public housing agency obligations must govern with respect to obligations, like those before us, issued subsequent to 1974. For the reasons we have expressed above, Congress' intention at that time is fairly clear on the face of the statute and in its legislative history.

*Conclusion*

We conclude that the Project Notes listed as items 77 and 78 on Schedule B of the decedent's Return are not includible and subject to tax under I.R.C. § 2033. Therefore, the plaintiff's motion for summary

judgment is granted and the defendant's cross motion is denied. An order will enter.