**Charles C. HAFFNER III and The Northern Trust Company, as Executors of the Will of Charles C. Haffner, Jr., deceased, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 84–1946.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1985.

Decided March 21, 1985.

As Amended April 23, 1985.

Middleton Miller, Sidley & Austin, Chicago, Ill., for plaintiffs-appellees.

Ernest J. Brown, Dept. of Justice, Washington, D.C., for defendant-appellant.

Before BAUER and POSNER, Circuit Judges, and JAMESON, Senior District Judge.*

PER CURIAM.

The executors of the estate of Charles C. Haffner, Jr., Deceased, brought this action against the United States, asserting a claim for refund of estate taxes paid on public housing agency obligations, known as Project Notes, issued pursuant to the "United States Housing Act of 1937," as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437. On cross motions for summary judgment the district court, in a detailed and well reasoned opinion, held that the Project Notes were exempt from federal estate taxes under section 11(b) of the Housing Act of 1937, 42 U.S.C. § 1437i(b). *Haffner v. United States*, 585 F.Supp. 354 (N.D.Ill. 1984).

We agree with the district court. With the following minor corrections we adopt Judge Will's opinion and affirm the judgment.

In the fourth full paragraph on page 356, lines 12–13, the citation should read *United States v. Manufacturers Nat'l Bank of Detroit.*

In the fourth full paragraph on page 357, lines 9–11, the final phrase of the quotation should read: *shall be exempt from all taxation* now or hereafter imposed by the United States.

In the second full paragraph on page 358, lines 18–19, the citation should read *American Bank and Trust Co. v. Dallas County.*

The third full paragraph on page 359 should read:

The *Jandorf* case is practically on all fours with this one. At issue there was the tax treatment of Victory Liberty

---

* The Honorable William J. Jameson of the District of Montana, sitting by designation.

bonds held by a foreign investor, obligations that were authorized by section 4 of the Victory Liberty Loan Act of March 3, 1919, Pub.L. No. 65–328, 40 Stat. 1309, 1311 (1919). Section 1 of the First Liberty Bond Act of April 24, 1917, Pub.L. No. 65–3, 40 Stat. 35 (1917) describes the tax treatment accorded bonds sold to United States investors and section 4 of the Victory Liberty Loan Act amends a prior act which describes that of bonds sold to foreign investors and purchased with foreign money. The wording of sections 1 and 4 is materially identical to that of sections 20(b) and 5(e), respectively, of the 1937 Act.

In the first full paragraph on page 361, line 8, the citation should read: 88 Stat. 633 (1974). The citation in the final line of that paragraph should read: 88 Stat. 633, 653 (1974).

The second full paragraph on page 361 should read as follows:

In 1949, Congress rewrote section 20 of the 1937 Act deleting any reference to the tax treatment of Authority obligations. See Section 304 of the Housing Act of 1949, Pub.L. No. 81–171, 63 Stat. 413, 427 (1949); 42 U.S.C. § 1420. After the 1949 Act became law, there were two tax exemptions for local housing agency obligations: Section 5(e) of the 1937 Act, 42 U.S.C. § 1437i(b), which applied to obligations issued pursuant to the 1937 Act, and Section 102(g) of the 1949 Act, Pub.L. No. 81–171, 63 Stat. 413, 416 (1949), 42 U.S.C. § 1452(g), which applied to obligations issued pursuant to the 1949 Act.

With the corrections set forth above, we adopt the opinion of the district court as the opinion of this court and affirm the judgment.[1]

AFFIRMED.

---

[1] We note that subsequent to Judge Will's opinion, Congress enacted the Deficit Reduction Act of 1984. 26 U.S.C. § 1 *et seq.* This Act provided, *inter alia,* that "Nothing in any provision of law exempting any property (or interest therein) from taxation shall exempt the transfer of such

POSNER, Circuit Judge, dissenting.

I disagree that notes issued by state or local public housing agencies are exempt from federal estate taxation by virtue of section 5(e) of the Housing Act of 1937.

The statutory language may seem emphatic and unqualified: the notes and income thereon "shall be exempt from all taxation now or hereafter imposed by the United States." But as has been held many times, both before and since 1937, such language does not create an exemption from estate taxation. See, e.g., *United States Trust Co. v. Helvering,* 307 U.S. 57, 60, 59 S.Ct. 692, 693, 83 L.Ed. 1104 (1939); *Murdock v. Ward,* 178 U.S. 139, 147–48, 20 S.Ct. 775, 778–79, 44 L.Ed. 1009 (1900); Lowndes, Kramer & McCord, Federal Estate and Gift Taxes § 1.1, at p. 2 (3d ed. 1974). An estate tax is a tax on a transfer of property, not a tax on the property itself or the income from it. This may seem an awfully refined distinction, but no one connected with this case has questioned that if section 5(e) stood alone, the taxpayer would lose.

Three points have carried the day for the taxpayer:

1. An alternative bill to the one that was enacted had, in its version of section 5(e), an express exclusion of estate, gift, and inheritance taxes from the tax exemption conferred by the section; section 5(e) as enacted does not.

2. Senator Walsh, a sponsor of the Housing Act, said on the floor of the Senate that "the bill gives *the public housing agencies* the right to issue tax-exempt bonds, which means they are free from income tax, surtax, *estate,* gift, and inheritance taxes." 81 Cong.Rec. 8085 (1937) (emphasis added).

3. Another section of the Act, section 20(b), provides that the obligations of the Federal Housing Authority itself (which the Act created) "shall be exempt, both as

property (or interest therein) from Federal estate, gift, and generation-skipping transfer taxes." This provision shall "apply to the estates of decedents dying, gifts made, and transfers made on or after June 19, 1984." Pub.L. No. 98–369, 98 Stat. 494, 939 (1984).

to principal and interest, from all taxation (*except surtaxes, estate, inheritance, and gift taxes*) now or hereafter imposed by the United States or by any State, county, municipality, or local taxing authority" (emphasis added); the parenthetical is missing from section 5(e).

None of these ambiguous tidbits, nor all three together, persuade me that Congress meant to grant extraordinary tax favors to the holders of notes of public housing agencies.

The alternative bill differed from the one enacted in other respects besides estate taxation, and I can find no discussion of that difference. Also, the bill was rejected in committee, hence didn't reach the floor of the Congress and no doubt was unknown to most members of Congress. There is no evidence that the alternative bill was rejected because it failed to exempt obligations of public housing agencies from estate taxes.

The phrasing of Senator Walsh's statement ("which means") suggests that he misunderstood the well-settled meaning of "tax-exempt bonds." Of course if this misunderstanding was enacted by Congress, that is the end of the case. But it would be unrealistic to think it was. The statement occurred in the course of a long speech by Senator Walsh explaining the provisions of the Act. The fact that no one jumped up and said, "Senator, I think you have misstated the effect of the tax-exemption language in section 5(e)," provides but weak evidence that the Senate (and House, whose concurrence was, of course, necessary for the enactment of the bill) intended to adopt a novel form of tax exemption. It is true that Senator Wagner, the author of the bill, was present and corrected Senator Walsh on some other matters; but since Homer nods, maybe Senator Wagner did too, on this occasion. In *Jandorf's Estate v. Commissioner of Internal Revenue*, 171 F.2d 464 (2d Cir.1948), as in this case, one section of the statute excepted estate taxes from the exemption granted by the statute and another did not, but the legislative history makes crystal clear that the differ-ence was deliberate. See *id.* at 466 and n. 1. Furthermore, for 20 years the Treasury had construed the section to grant an exemption from estate taxes. See *id.* at 467.

Nor can any significance be attached to the express exemption from estate tax in section 20(b), once the historical context of this provision is understood. In 1937 the federal income tax consisted of a modest normal tax (4 percent) and a graduated surtax to make the income tax progressive. The Revenue Act of 1936 had made the tax treatment of obligations of federal agencies depend on the intent of the statute under which the obligations were issued, see section 22(b)(4), 49 Stat. 1658; so if the framers of the Housing Act of 1937 wanted to make the income on obligations of the Federal Housing Authority exempt from normal tax but not surtax they had to say so, and they did, in section 20(b). Having decided not to exempt such income from surtax they added—so far as appears out of an abundance of caution rather than to supply clues to interpreting section 5(e)— that such income would not be exempt from estate, inheritance, or gift taxes, either. With regard to the obligations not of the Housing Authority itself but of state and local public housing agencies, the framers didn't want to distinguish normal tax from surtax but to exempt the income on such obligations from all federal income taxation; so they didn't plug in the parenthetical phrase from section 20(b).

Although section 22(b)(4)(A) of the Revenue Act of 1936, 49 Stat. 1657–58, had exempted from the federal income tax income from obligations of states and their "political subdivision[s]," there was controversy over whether state and local public housing agencies were "political subdivisions" for federal tax purposes, see Tretter, *Public Housing Finance*, 54 Harv.L. Rev. 1325, 1326 n. 4 (1941)—hence the need for an express exemption in section 5(e). If Congress had wanted to take the extraordinary step of exempting such income from estate as well as income taxation— and to exempt the principal as well— there would in all likelihood have been *some* discussion of the matter, as there

was in the legislative history of the statute construed in *Jandorf's Estate;* Senator Walsh's statement would not have been passed over in silence.

By what I respectfully suggest is an unrealistic analysis of the legislative process, the district court created an exemption that so far as I can see was no part of Congress's intent when it passed the Housing Act. I would reverse.