William F. NETSKY, as Executor of the Estate of Frank W. Netsky, deceased

v.

UNITED STATES of America.

Civ. A. No. 85–5219.

United States District Court, E.D. Pennsylvania.

Aug. 8, 1986.

Ian M. Comisky, Philadelphia, Pa., for plaintiff.

Michael J. Salem, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

This is an action against the government filed by the executor of the estate of Frank W. Netsky ("decedent") asserting a claim for a refund of $1,233,739.89 in estate taxes, plus costs and interest. Jurisdiction is predicated on 28 U.S.C. § 1346(a)(1). The parties have filed cross motions for summary judgment based on the undisputed facts in the record. For the reasons stated in this Memorandum, the executor's motion is granted and the government's motion is denied.

The decedent, a citizen of Montgomery County, died testate on August 18, 1981. The plaintiff was appointed as executor of the estate. In discharging his responsibilities, on May 18, 1982 the plaintiff timely filed a United States Estate Tax Return,

Form 706, and paid the tax shown as due in the amount of $1,378,547.76.[1]

The following public housing agency obligations ("project notes") were included in the decedent's estate as part of Schedule B of the 706 return:

(1) $200,000.00 Fayette County, PA Project Notes, 7.32%, due 12/4/81 with interest accrued from 6/30/81 to 8/18/81

(2) $1,000,000.00 Philadelphia, PA Project Notes 5th Series 1980, 6.04%, due 10/21/81 with interest accrued from 10/7/80 to 8/18/81

(3) $500,000.00 Philadelphia Housing Authority Project Notes, 6.32%, due 10/2/81 with interest accrued from 10/7/80 to 8/18/81

(4) $200,000.00 Pittsburgh, PA Project Notes, 8.21%, due 12/4/81 with interest accrued from 6/2/81 to 8/18/81

(5) $1,000,000.00 Williamsport, PA Project Notes 7.54% due 12/4/81 with interest accrued from 8/4/81 to 8/18/81

The decedent purchased each of these project notes between 1980 and 1981 with the expectation and belief that they were exempt from all taxes.

On May 7, 1984 the plaintiff filed an administrative claim for a refund, asserting that the project notes should not have been included as part of the property in valuing the decedent's gross estate. The plaintiff claimed the project notes are exempt from estate taxation pursuant to Section 11(b) of the United States Housing Act of 1937, Pub.L. No. 75–412, 50 Stat. 888 (1937) ("Section 11(b)") and Section 102(g) of the Housing Act of 1949. The IRS did not act favorably on the plaintiff's claim in the six month period following its filing. Having exhausted his administrative remedies, the plaintiff filed this suit September 9, 1985. The defendant claims first, that the notes are not exempt from estate tax under Section 11(b) and second, that retroactive, curative legislation has clarified that the Sec-

tion 11(b) tax exemption does not apply to the federal estate tax. The questions presented by the cross motions for summary judgment are solely of law.

*The Project Notes Were Exempt From Estate Tax*

■ Section 11(b) provides that obligations like the project notes owned by the decedent and the interest on them "shall be exempt from all taxation now or hereafter imposed by the United States whether paid by such agencies or by the United States." While statutory language granting an exemption from "taxation" and "all taxation" does not necessarily operate as an exemption from estate taxes, *see, e.g., Murdock v. Ward,* 178 U.S. 139, 20 S.Ct. 775, 44 L.Ed. 1009 (1900); *U.S. Trust Co. v. Helvering,* 307 U.S. 57, 59 S.Ct. 692, 83 L.Ed. 1104 (1939), where there is a "strong indication" in a statute and its legislative history that Congress intended an exemption to encompass estate taxes, specific congressional intent overrides the general rule. *See Greene v. United States,* 171 F.Supp. 459, 145 Ct.Cl. 259 (1959), *cert. denied,* 360 U.S. 933, 79 S.Ct. 1451, 3 L.Ed.2d 1545 (1959).

Congress, through the language of Section 11(b) and the Act's legislative history, manifested its clear and strong intent to exempt project notes from estate taxes. The District Court of the Northern District of Illinois determined that project notes are exempt from federal estate taxes under Section 11(b). *Haffner v. United States,* 585 F.Supp. 354 (N.D.Ill.1984), *aff'd* 757 F.2d 920 (7th Cir.1985).

The court presented a detailed and well reasoned opinion to support this conclusion, and delineated several independent sources which illustrate the congressional intent to exempt the project notes from estate taxes. 585 F.Supp. at 357–361. I am persuaded that the reasoning and conclusion in that case is correct, and I choose to adopt it in the instant matter. The defendant submits that *Haffner* constitutes bad law, and

---

**1.** On April 24, 1984, the Internal Revenue Service ("IRS") asserted a deficiency of $38,212.96. The plaintiff waived restrictions on assessment

and collection, and shortly thereafter paid the tax deficiency.

urges the court to adopt the reasoning presented in the dissenting opinion of Judge Posner, 757 F.2d at 921. To do so would entail ignoring the act's legislative history.

### Section 641 of the Deficit Reduction Act of 1984 Does Not Affect the Result of this Case

On July 18, 1984 Congress passed Section 641 of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 494 ("Sec. 641"), which makes project notes taxable. According to subsection (b)(1), the law applies to estates in which the decedent died, a gift was made, or a transfer was made on or after June 19, 1984. The decedent in this matter died August 18, 1981; and the claim for a refund was filed May 7, 1984. Thus, subsection (b)(1) does not make Sec. 641(a) applicable to this case.

However, the government argues Sec. 641(a) applies by virtue of subsection (b)(2), because, the government claims, it makes the "substantive clarifying provisions" of subsection 641(a) applicable to certain types of transactions rather than transactions occurring on or before a particular date. Subsection (b)(2) states:

(b) *Effective Date*

. . . . . . . .

(2) *Treatment of certain transfers treated as taxable.*—The provisions of subsection (a) shall also apply in the case of any transfer of property (or interest therein) if at any time there was filed an estate or gift tax return showing such transfer as subject to Federal estate or gift tax.

It is undisputed that, prior to the plaintiff seeking a refund, he reported the project notes on the decedent's estate tax return.[2] However, the plaintiff argues Sec. 641 is not made applicable by subsection (b)(2), or by any other subsection, because Sec. 641 is not retroactive in application. The plaintiff also claims that retroactive application would violate the due process clause and would deny the plaintiff equal protection of the law.

■ The Deficit Reduction Act was passed on July 18, 1984. Subsection (b)(1) details an effective date of June 19, 1984. Thus, the act is at least partially retroactive because Congress' intent that the bill apply retroactively for a thirty day period prior to its passage is explicitly stated. However, I do not accept the defendant's argument that the act should apply to refund claims filed before June 19, 1984. Neither the language of the statute nor its legislative history necessarily compel the conclusion that Congress intended the act be applied in a fully retroactive fashion. Moreover, even if that were Congress' intent, I find that retroactive application of the statute would be inappropriate in the circumstances of the instant case because it would violate the plaintiff's constitutional guarantees of due process.

■ The Third Circuit in *Temple University v. United States*, 769 F.2d 126, 135 (1985), in considering the retroactivity of FICA tax provisions, quoted *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 126, 83 L.Ed. 87 (1938) for a conceptual framework for constitutional retroactivity analysis: "In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress constitutional limitation." Both parties referred to the analytical framework summarized in *United States v. Darusmont*, 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981), which states that three tests have been developed for determining whether a tax is so harsh and oppressive as to be a denial of due process: Whether the taxpayer could have altered his behavior to avoid the tax if it could have been anticipated by him at the time transaction was effected; whether the taxpayer had notice of the tax when he engaged in the transaction; and whether

---

**2.** The plaintiff emphasizes that the executor reported the notes because as a fiduciary he was required to adopt a conservative tax position. By reporting the project notes on the return, the executor prudently avoided interest payment exposure, and, instead, permitted the statutory rate to run in favor of the estate on the overpayment.

the tax is a new tax, not merely an increase in the rate of an existing tax. In applying *Temple's* conceptual framework and *Darusmont's* analytical framework to this case I conclude that a retroactive application of Sec. 641(b)(2) encompassing refund claims filed before June 19, 1984 would be so harsh and oppressive as to be denial of due process.

First, I note that at the time he purchased the project notes the decedent could have altered his behavior and engaged in alternative estate planning to reduce his tax liability had he anticipated estate taxes would be levied on them. For example, he could have made gift transfers, or he could have chosen investments with higher yields.

Second, I find that the decedent had no notice of the tax when he purchased the project notes. The statute was not enacted or ever contemplated until 1984. In answering interrogatories, the government conceded the taxpayer had no notice.[3] The government now argues certain treasury regulations and revenue rulings had put the decedent on notice before the time of his death. I disagree. Treasury Regulation § 20.2033 deals only with a general principle that income tax exemptions do not necessarily require an estate tax exclusion. *Murdock v. Ward*, 178 U.S. 139, 20 S.Ct. 775, 44 L.Ed. 1009 (1900) was also cited by the government, but it too stands only for the general proposition that an exemption from taxation does not necessarily operate as an exemption from estate taxes. Revenue Ruling 81–63 was not published until the first half of 1981. By that time, the decedent, who had purchased project notes beginning in October of 1980, had already completed his estate plan and had purchased the majority of the project notes at issue. The government has cited no case which would have put the decedent on notice by holding that project notes were subject to estate taxation.

Third, I find that Section 641 amounts to a new tax. The government has vigorously argued that Section 641 is "clarifying, curative legislation," and therefore is not subject to strict construction favoring prospective application. Section 641 is titled "Clarification of Treatment of Certain Exemptions for Purposes of the Federal Estate and Gift Taxes." However, the fact is that Sec. 641 did not fulfill a previous Congressional design: rather, it changed the design by making the project notes subject to estate taxes for the first time. Before the enactment of Section 641, project notes were exempt from estate taxes. *See Haffner v. United States*, 757 F.2d 920 (7th Cir.1985).

In conclusion, the application of Section 641 to the facts of this case would violate the due process clause. The decedent died almost four years prior to the change in the law, and the decedent did not believe the project notes were subject to estate tax. Internal Revenue Service circulars and a Public Housing Authority memorandum indicated that project notes were not subject to estate tax. No case law or revenue ruling articulated the contrary position, until the publication of Rev. Ruling 81–63 in the year the decedent died. The enactment of Section 641 made project notes subject to estate taxes for the first time. Thus, after reviewing the circumstances of this case and the nature of the tax at issue I conclude that retroactive interpretation of Sec. 641(b)(2) so as to include the plaintiff's refund claim would be so harsh and oppressive it would violate the due process clause.

Following the hearing, at the court's request, the plaintiff submitted a computation of the refund alleged to be due in this matter. This computation was submitted by cover letter of June 11, 1986. To date, the government has not contested the computation, despite having averred at the hearing that there was a mathematical error in the plaintiff's calculations. For the purposes of the motions presently before it,

---

**3.** Interrogatory No. 11: Do you contend that the decedent had notice before the date of his death of the possibility of the enactment or the enactment of Section 641 of the Tax Reform Act of 1984?

Response: No.

the court will accept the plaintiff's computation, as attached to this memorandum.

The plaintiff alleges he is entitled to an award of attorney's fees as a prevailing party in this matter, pursuant to 26 U.S.C. § 7430. I do not agree, as I do not find that the defendant's position in this matter was unreasonable.

An Order follows.

## ORDER

AND NOW, this 8th day of August, 1986, for the reasons set forth in the foregoing Memorandum, and after a hearing before the court, it is ORDERED that plaintiff's motion for summary judgment is GRANTED and defendant's motion for summary judgment is DENIED and that summary judgment shall be entered in favor of the plaintiff and against defendant United States of America in the amount of One million two hundred thirty three thousand seven hundred thirty nine dollars and eighty nine cents ($1,233,739.89), plus statutory interest thereon.

### ESTATE OF FRANK W. NETSKY

| Column 1 | | Column 2 | | |
| --- | --- | --- | --- | --- |
| **FEDERAL ESTATE TAX RETURN AS FILED** | | **FEDERAL ESTATE TAX RETURN AS ADJUSTED** | | |
| Total Gross Estate | $3,977,422.77 | Total Gross Estate (as reported) | | $3,977,422.77 |
| Total Allowable Deductions | 322,980.56 | Increases to Gross Estate per Form 3228 | Sch. (B) 74,998.28 | |
| Taxable Estate | 3,654,442.21 | | Sch. (F) 527.00 | |
| Tentative Tax | 1,670,009.75 | Corrected Gross Estate (per Form 3228) | | 4,052,948.05 |
| Gross Estate Tax | 1,670,009.75 | Total Allowable Deductions (as reported) | | 322,980.56 |
| Allowable Unified Credit Against Estate Tax | 47,000.00 | Decrease per Form 3228 to Sch. (J) | | (1,008.79) |
| Credit for State Death Taxes | 244,461.99 | Increase per Form 3228 to Sch. (K) | | 1,014.38 |
| Net Estate Tax | 1,378,547.76 | Corrected Total Deductions (per Form 3228) | | 322,986.15 |
| Payments Made | | Corrected Taxable Estate (per Form 3228) | | 3,729.961.90 |
| May 18, 1982 | $1,378,547.76 | Less: Project Notes | | 2,973.760.65 |
| April 30, 1984 | 38,212.96 | Taxable Estate | | 756.201.25 |
| | $1,416,760.72 | Tentative Tax | | 250,718.49 |
| | | Gross Estate Tax | | 250,718.49 |
| | | Allowable Unified Credit Against Estate Tax | | 47,000.00 |
| | | Credit for State Death Taxes | | 20,697.66 |
| | | Net Estate Tax | | $183,020.83 |

| | |
| --- | --- |
| Payments made: | $1,416,760.72 |
| Net Estate Tax Per Column 2: | (183,020.83) |
| Refund Due: | $1,233,739.89 |