**V.R. SHACKELFORD, Jr., William du Pont III, and David C. Rittenhouse, as Executors of the Will of Marion du Pont Scott, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 86–0330–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 16, 1986.

Atwell W. Somerville, Somerville, Moore & Somerville, Orange, Va., James J. Carroll, Holly A. Harrison, Sidley & Austin, Chicago, Ill., for plaintiffs.

John J. McCarthy, Tax Div., Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., E.D. of Va., Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This case comes before the Court on stipulated facts in a suit by the executors of the estate of the decedent Marion du Pont Scott for the refund of federal estate taxes in the amount of $22,532,904 plus interest, which plaintiffs allege represents that part of the federal estate tax paid by the estate which is attributable to the inclusion in the value of the taxable estate of 20 "Project Notes" issued by public housing agencies. These "Project Notes" were reported as includable in the taxable estate on the timely filed federal estate tax return. The tax was paid and a timely claim for refund of taxes was filed.

On June 7, 1960, the decedent Marion du Pont Scott established a revocable trust with herself as beneficiary and the Delaware Trust Company as trustee. In the course of its operations this trust purchased the following 20 "Project Notes":

(a) $1,680,000 par Beckley, West Virginia 5.38% Project Note due 10/4/83 (purchased 1/6/83);

(b) $4,000,000 par Durham, North Carolina 6.28% Project Note due 10/7/83 (purchased 12/1/82);

(c) $2,000,000 par Fairfax County, Virginia 5.42% Project Note due 10/4/83 (purchased 12/20/82);

(d) $2,495,000 par Franklin Housing Authority, Virginia 4.82% Project Note due 12/6/83 (purchased 5/4/83);

(e) $1,985,000 par Hawaii Housing Authority 5.27% Project Note due 10/4/83 (purchased 1/6/83);

(f) $3,000,000 par Helena, Montana 5.34% Project Note due 9/7/83 (purchased 12/20/82);

(g) $3,000,000 par Metropolitan Nashville, Tennessee 4.44% Project Note due 2/1/84 (purchased 3/8/83);

(h) $5,000,000 par New York, New York 5.75% Project Note due 6/5/84 (purchased 7/8/83);

(i) $1,545,000 par Newark, New Jersey 5.31% Project Note due 11/1/83 (purchased 1/11/83);

(j) $5,000,000 par Newark, New Jersey 5.88% Project Note due 8/1/84 (purchased 7/8/83);

(k) $1,500,000 par Norfolk, Virginia 5.15% Project Note due 2/1/84 (purchased 4/6/83);

(l) $3,000,000 par Oklahoma City, Oklahoma 5.20% Project Note due 10/7/83 (purchased 11/10/82);

(m) $230,000 par Petersburg, Virginia 4.82% Project Note due 9/7/83 (purchased 4/6/83);

(n) $5,000,000 par Portland, Oregon 5.90% Project Note due 8/2/84 (purchased 7/12/83);

(o) $2,000,000 par Richmond, Virginia 5.87% Project Note due 8/2/84 (purchased 7/15/83);

(p) $509,000 par Roanoke, Virginia 4.82% Project Note due 9/7/83 (purchased 4/6/83);

(q) $2,350,000 par Roanoke-Chowan, North Carolina 5.27% Project Note due 10/4/83 (purchased 1/6/83);

(r) $5,000,000 par San Carlos, Arizona 5.44% Project Note due 11/1/83 (purchased 12/20/82);

(s) $1,500,000 par Waynesboro, Georgia 5.12% Project Note due 5/1/84 (purchased 7/26/83); and

(t) $2,500,000 par Wichita Falls, Texas 5.51% Project Note due 4/3/84 (purchased 7/5/83).

The notes had a value of $52,310,604 on September 4, 1983, the date of death of Marion du Pont Scott.

The 20 "Project Notes" were all issued by public housing agencies in connection with low income housing projects pursuant to Section 11(b) of the Act of September 1, 1937, ch. 896, 50 Stat. 888 (commonly called the United States Housing Act of 1937), as amended by Section 201 of the Housing and Community Development Act of 1974, Pub.L. No. 93–393, 88 Stat. 633 (42 U.S.C. Sec. 1437i(b)), which renumbered Section 5(e) of the 1937 Act as 11(b). These "Project Notes" were issued by public housing agencies with the approval of the United States Department of Housing and Urban Development (HUD) for the purpose of funding public housing. Section 11(b) of the Housing Act of 1937 as amended, provides:

> Except as provided in section 5(g), obligations, including interest thereon, issued by public housing agencies in connection with low-income housing projects shall be exempt from all taxation now or hereafter imposed by the United States whether paid by such agencies or by the Secretary. The income derived by such agencies from such projects shall be exempt from all taxation now or hereafter imposed by the United States.

Under this statute no excise taxes were imposed upon "Project Notes" issued pursuant to the statute nor was any income tax imposed upon income derived from these project notes.

With respect to federal estate taxes, however, the Internal Revenue Service (IRS) prior to the decedent's death had taken the position that such "Project Notes" were includable in a decedent's estate for federal estate tax purposes. This position was promulgated in 1981 in Rev. Rul. 81–63, 1981–1 Cum.Bull. 455.

On September 4, 1983, Marion du Pont Scott died a resident of Orange County, Virginia, leaving a will which was admitted to probate on September 8, 1984, by the Circuit Court for Orange County. The Circuit Court for Orange County appointed the plaintiffs herein, V.R. Shenker, Jr., David C. Rittenhouse, and William C. du Pont, III, as executors of the decedent's estate and will.

After the decedent's death on September 4, 1983, but before the filing of a federal estate tax return on May 31, 1984, the United States District Court for the Northern District of Illinois, Eastern Division, in *Haffner v. United States,* 585 F.Supp. 354 (1984), ruled that "Project Notes" issued under the Housing Act of 1937, as amended by the Housing Act of 1974, such as those held in the decedent's trust were excludable from federal taxation by reason of the exemption granted by Section 11(b) of the Housing Act of 1937, as amended.

The *Haffner* decision was publicized in the Chicago Tribune on April 30, 1984, and was also picked up by the news services and other newspapers including the Wall Street Journal on May 2, 1984. Because of this publicity, the plaintiffs became aware of the *Haffner* decision in the beginning of May, 1984, approximately five weeks before the estate tax was due and one month before the actual filing of the return. The plaintiffs were also aware that the IRS disagreed with the *Haffner* decision which was contrary to its position in Rev.Rul. 81–63. Thereafter, on May 31, 1984, the plaintiffs filed a federal estate tax return for the decedent's estate which included the value of the "Project Notes" on Schedule G of the return.

On June 22, 1984, 22 days after the filing of the federal estate tax return (in May 1984) on behalf of the estate, both the Senate and the House of Representatives were considering a tax bill called the Deficit Reduction Act of 1984 (DEFRA), Pub.L. No. 98–369, 98 Stat. 494. On June 22, 1984, the House and Senate Conferees approved a DEFRA bill which included the following provisions as Section 641:

SEC. 641. CLARIFICATION OF TREATMENT OF CERTAIN EXEMPTIONS FOR PURPOSES OF THE

FEDERAL ESTATE AND GIFT TAX-
ES.

(a) General Rule.—Nothing in any pro-
visions of law exempting any property
(or interest therein) from taxation shall
exempt the transfer of such property (or
interest therein) from Federal estate,
gift, and generation-skipping transfer
taxes. In the case of any provisions of
law enacted after the date of the enact-
ment of this Act, such provisions shall
not be treated as exempting the transfer
of property from Federal estate, gift,
and generation-skipping transfer taxes
unless it refers to the appropriate provi-
sions of the Internal Revenue Code of
1954.

(b) *Effective Date.*—

(1) *In general.*—The provisions of sub-
section (a) shall apply to the estates of
decedents dying, gifts made, and trans-
fers made on or after June 19, 1984.

(2) *Treatment of certain transfers
treated as taxable.*—The provisions of
subsection (a) shall also apply in the case
of any transfer of property (or interest
therein) if at any time there was filed an
estate or gift tax return showing such
transfer as subject to Federal estate or
gift tax.

(3) *No inference.*—No inference shall
arise from paragraphs (1) and (2) that
any transfer of property (or interest
therein) before June 19, 1984, is exempt
from Federal estate and gift taxes.

No prior version of the DEFRA bill con-
sidered either by the Senate of House con-
tained Section 641 or any other similar
provision. On June 27, 1984, Congress
passed the DEFRA bill which included Sec-
tion 641, and on June 18, 1984, the Presi-
dent signed this bill into law.

This section of DEFRA of course was
directed to the issue decided in *Haffner*,
and it rendered that decision noncontrolling
as to the future by specifically providing
that assets such as the "Project Notes" in
issue in the instant case, and in *Haffner*,
were subject to federal estate taxation.
Further, Section 641(b)(1) provided that this
statute controlled all cases in which a dece-

dent died after June 19, 1984, and Section
641(b)(2) provided that this statute should
have a retroactive effect as to all cases
wherein a federal estate tax return had
previously been filed showing a transfer of
such "Project Notes" from a decedent as
being subject to federal estate taxation.

The United States appealed the *Haffner*
decision to the United States Court of Ap-
peals for the Seventh Circuit, and that
court affirmed the District Court's decision
on March 21, 1985. *Haffner v. United
States*, 757 F.2d 920 (1985).

Thereafter, on September 16, 1985, the
plaintiffs filed a claim for refund of estate
tax with the District Director for the IRS
in Memphis, Tennessee seeking a refund of
estate tax of $22,532,904 plus interest
thereon, which the plaintiffs alleged repre-
sented the estate tax attributable to the
inclusion of the value of the 20 "Project
Notes" in the taxable estate. On March
28, 1985, six months after filing of the
claim for refund, plaintiffs instituted the
instant suit for refund of estate tax paid on
the "Project Notes" in the amount of $22,-
532,904 plus interest according to law.

The plaintiffs maintain that the "Project
Notes" in question should not have been
included in the decedent's estate as they
are not taxable under Section 11(b) of the
Housing Act of 1937, as amended by the
Housing Act of 1974, pursuant to the ratio-
nale of the trial court's decision in *Haffner*,
and that Section 641 of the DEFRA Act
cannot be applied retroactively so as to
require their inclusion in the taxable estate.

The estate tax is not a direct tax on the
"Project Notes" themselves. It is a tax on
the transfer of the property to the dece-
dent's legatees. *Plummer v. Coler*, 178
U.S. 115, 20 S.Ct. 829, 44 L.Ed. 998 (1900),
*Greiner v. Lewellyn*, 258 U.S. 384, 42 S.Ct.
324, 66 L.Ed. 676 (1922), *United States v.
United States Manufacturers National
Bank*, 363 U.S. 194, 80 S.Ct. 1103, 4
L.Ed.2d 1158 (1960).

It has also been long established that an
exemption of securities or bonds from "tax-
ation" or "all taxation" does not operate as
an exemption from estate or inheritance

taxes. *Murdock v. Ward,* 178 U.S. 139, 20 S.Ct. 775, 44 L.Ed. 1009 (1900), *United States Trust Co. v. Helvering,* 307 U.S. 57, 59 S.Ct. 692, 83 L.Ed. 1104 (1939). The Supreme Court has also made clear that "exemptions from taxation do not rest upon implication". *United States Trust Co. v. Helvering,* 307 U.S. 57, 59 S.Ct. 692, 83 L.Ed. 1104 (1939). However, in *Green v. United States,* 171 F.Supp. 459, 145 Ct.Cl. 259 (1959), and *Jandorf's Estate v. Commission,* 171 F.2d. 464 (2d. Cir.1948) the court recognized the premise that where there is a strong indication in a particular statute and its legislative history that Congress intended an exemption from "all taxation" to encompass excise taxes as well, the specific Congressional intention should override the general rule of *Murdock v. Ward, supra.*

The Court in *Haffner,* relies on the principal in *Jandorf, supra,* and uses three points to justify a finding that Congress had the specific intention to exempt these "Project Notes" from all taxation. An alternative bill to the one that was enacted was proposed by Secretary Ickes. In its version of section 5(e), an express exclusion of estate, gift and inheritance taxes from tax exemption is conferred; section 5(e) as enacted does not.

Secondly, Senator Walsh, a sponsor of the bill, stated on the Senate floor that "the bill gives the public housing agencies the right to issue tax exempt bonds, which means they are free from income tax, surtax, estate, gift and inheritance taxes". 81 Cong.Rec. 8085 (1937).

As the third point the court referred to section 20(b) of the act providing for the obligations of the Federal Housing Authority itself. Section 20(b) provides they "shall be exempt, both as to principal and interest, from all taxation (except surtaxes, estate, inheritance, and gift taxes now or hereafter imposed by the United States or by any state, county, municipality, or local taxing authority)".

The majority in *Haffner* adopted the opinion of the District Court with minor corrections. Judge Posner, in a dissenting opinion made an analysis of the points presented to interpret intent of Congress and found none of the points nor the three together persuasive that Congress had the specific intention to exempt these "Project Notes" from estate taxation. After an examination of the factors I find the reasoning of the dissent to properly evaluate these factors. I don't believe, when analyzed, these factors provide a "strong indication" of Congressional intent to exempt these notes from estate taxation.

While an alternative bill was presented by Secretary Ickes, the bill differed in many substantive respects and was rejected in Committee. There is no evidence that the bill was rejected because it failed to exempt obligations of public housing agencies from estate taxes. There is also no indication that the bill was ever known to most members of Congress since it did not reach the floor. Absent some indication that the provisions of both bills were reviewed and debated by members of Congress, little can be drawn from the acceptance of one and not the other.

Nor can great significance be attached to the statement of Senator Walsh. His statement was a lengthy one, and addressed many aspects of the bill. The fact that his statement was not corrected by another member is weak evidence that all members of Congress intended to adopt a novel form of tax exemption. Also, Judge Posner was perceptive in his analysis of the use of the words, ("which means") in his statement as suggesting that Senator Walsh misunderstood the well settled meaning of tax exempt bonds.

The express exemption from estate tax in section 20(b) of the 1937 act provides no support for intent in 5(e). Legislative history indicates it was the intent of Congress to make income an obligation of the Federal Housing Authority exempt from normal tax but not surtax which they did in 20(b). Having decided not to exempt such income from surtax they added that such income would not be exempt from estate, inheritance or gift taxes. With regard to the obligations of state and local public hous-

ing agencies the framers wanted to exempt such obligations from all federal income taxation and thus left out the phrase that had been included in section 20(b).

As stated previously an exemption from all taxation without exception generally does not affect the imposition of estate and other excise taxes. Only where there is a strong indication in a particular statute and its legislative history that Congress intended an exemption from all taxation will the specific Congressional intention override the general rule. *Murdock v. Ward, supra.*

The plaintiff urges the finding of specific intention by Congress because of the three points used as justification by the *Haffner* court. However, the express exclusion in 20(b) and not in 5(e) is explained by the attempt of Congress to have different obligations issued under the 1937 Act affected differently by income taxation and can furnish little if any evidence of Congressional intent toward estate, gift and inheritance taxes. The fact that an alternative bill was in Committee and not reported out provides no indication of intent. There is no evidence of debate, even in Committee, of the pertinent provisions of the bill. Since the bill did not get out of Committee there is no indication that a majority of Congress even knew about the provisions of the bill. Lastly, to impute great significance to Senator Walsh's speech in the Senate would not be warranted. The Supreme Court has pointed out that one isolated remark by a single Senator, even though he was a sponsor of the legislation, is not controlling in analyzing legislative history. *Weinberger v. Rossi,* 456 U.S. 25, 102 S.Ct. 1510, 71 L.Ed.2d 715 (1982); *Consumer Product Safety Commission v. GTE Sylvania Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). A statement by one Senator, even a sponsor, which was part of a lengthy speech, and not corrected by another member provides weak evidence of intent. It is particularly weak when the statement itself would seem to indicate a misunderstanding of the well settled meaning of tax exempt bonds on the part of the Senator.

In *Jandorf, supra,* one section of the statute excepted estate taxes and another did not, however, the legislative history makes clear the difference was deliberate. The bill at issue in *Jandorf* had a full scale Congressional debate based on the assumption that the proposed legislation would result in an exemption from estate taxes. Where there is a strong indication in a statute and its legislative history that Congress intended an exemption, the specific Congressional intention should override the general rule. Here, however, there is no strong indication of Congressional intention to exclude these "Project Notes" from estate, gift or inheritance taxation and the general rule of law must apply The "Project Notes" in this case are subject to estate taxation and judgment must be entered for the defendant. The implications of Section 641 of the Deficit Reduction Act of 1984 need not be addressed.

An appropriate order shall issue.

## ORDER

For reasons stated in the attached Memorandum Opinion, it is hereby:

ORDERED that judgment is GRANTED to the defendant and this case is DISMISSED with prejudice.